Jason R. Naess, ISBN 8407
Assistant United States Trustee
Brett R. Cahoon, ISBN 8607
Andrew S. Jorgensen, ISBN 8695
United States Department of Justice
Office of the United States Trustee
550 W. Fort Street, Ste., 698
Boise, Idaho 83724
(208) 334-1300
(208) 334-9756 [Facsimile]
ustp.region18.bs.ecf@usdoj.gov

Attorneys for the Acting United States Trustee

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF IDAHO

In re:

| | |
|---|---|
| BRIAN ANDREASEN and KATHRYN A. ANDREASEN, | Case No. 19-40324-JMM  (Ch. 7) |
| PETER MICHAEL LESBO, | Case No. 19-40683-JMM  (Ch. 7) |
| STEPHEN PICHETTE and DANIELLE PICHETTE, | Case No. 19-40730-JMM  (Ch. 7) |
| LYONE B. OVERLIN and REBECCA J. OVERLIN, | Case No. 19-40972-JMM  (Ch. 7) |
| CHRISTOPHER LEE ALLEN and HALEY CHERIE ALLEN, | Case No. 20-00634-NGH  (Ch. 7) |
| MORRIS ADAIR MARGESON, | Case No. 20-00760-NGH  (Ch. 7) |
| KATHERINE L. LANTZ, | Case No. 20-00765-NGH  (Ch. 7) |
| REBECCA LYNN ESTRACA, | Case No. 20-00784-NGH  (Ch. 7) |

**Motion for Orders to Show Cause -  1**

| | |
|---|---|
| JAMES EDWARD DESCOTEAU, | Case No. 20-00843-JMM  (Ch. 7) |
| EUGENE SWINHART, | Case No. 20-00915-NGH  (Ch. 7) |
| HEATHER MANNING, | Case No. 20-01004-JMM  (Ch. 7) |
| DOMINIQUE WILSON, | Case No. 20-01047-JMM  (Ch. 7) |
| LESLIE A. SETTLES, | Case No. 20-01063-JMM  (Ch. 7) |
| APRIL TREJO ESPINO, | Case No. 20-40528-JMM  (Ch. 7) |
| DARREL DICKSON, JR., | Case No. 20-40754-JMM  (Ch. 7) |
| KARA D. ANDRUS, | Case No. 20-40819-JMM  (Ch. 7) |
| TARA DAWN MACTAGGART, | Case No. 20-40902-JMM  (Ch. 7) |
| BRANDY G. EMDIN, | Case No. 20-40903-JMM  (Ch. 7) |
| CHRISTY L. PHIPPS, | Case No. 20-40915-JMM  (Ch. 7) |
| ALICIA D. BARENDREGT and COLIN BARENDREGT, | Case No. 20-40931-JMM  (Ch. 7) |
| TYRON L. BATES and MEAGAN BENNETT, | Case No. 20-40961-JMM  (Ch. 7) |
| HANNAH JOY CAIN, | Case No. 21-00248-JMM  (Ch. 7) |
| JAMIE POOLE, | Case No. 21-00512-NGH  (Ch. 7) |

| | |
|---|---|
| DAVID MARTINEZ AGUILAR, | Case No. 21-00553-NGH  (Ch. 7) |
| LAUREN DAWN RIVERA, | Case No. 21-40002-JMM  (Ch. 7) |
| CALLIE RAMIREZ, | Case No. 21-40012-JMM  (Ch. 7) |
| RUTH M. CRISP, | Case No. 21-40032-JMM  (Ch. 7) |
| LISA M. PHIPPS, | Case No. 21-40100-JMM  (Ch. 7) |
| RHONDA M. WRIGHT, | Case No. 21-40160-JMM  (Ch. 7) |
| KENDRICK N. PEREIRA, | Case No. 21-40162-JMM  (Ch. 7) |
| HUNTER B. SOLIDAY, | Case No. 21-40286-JMM  (Ch. 7) |
| KRISTI M. RANDALL, | Case No. 21-40374-JMM  (Ch. 7) |
| ANNA M. BAUMGART, | Case No. 21-40415-JMM  (Ch. 7) |
| SAMANTHA M. WHITWORTH, | Case No. 21-40460-JMM  (Ch. 7) |
| JOSHUA T. CLAUNCH and ANIKA D. CLAUNCH, | Case No. 21-40466-JMM  (Ch. 7) |
| ASHLEE M. CROASMUN, | Case No. 21-40467-JMM  (Ch. 7) |
| CAMERON WARD and MELISSA HEATH, | Case No. 21-40476-JMM  (Ch. 7) |
| MARK D. CHRISTENSEN and SARAH A. CHRISTENSEN, | Case No. 21-40477-JMM  (Ch. 7) |

**Motion for Orders to Show Cause -  3**

| | |
|---|---|
| BRITNI HOWE and CASSIE HOWE, | Case No. 21-40482-JMM  (Ch. 7) |
| RAFA ELLIOTT and CYNTHIA ELLIOTT, | Case No. 21-40483-JMM  (Ch. 7) |
| CHAD N. MOXLEY and TONI L. MOXLEY, | Case No. 21-40497-JMM  (Ch. 7) |
| CHRISTOPHER COOK and TAUSHA COOK, | Case No. 21-40513-JMM  (Ch. 7) |
| LOUIS DAVIS ELLWOOD and JESSICA ELLWOOD, | Case No. 21-40517-JMM  (Ch. 7) |
| ERIC W. HORTON and RANDALEE M. BROWYER, | Case No. 21-40521-JMM  (Ch. 7) |
| CODY W. PLICKA and ANGELE M. PLICKA, | Case No. 21-40525-JMM  (Ch. 7) |
| NORBERTO RODRIGUEZ, | Case No. 21-40526-JMM  (Ch. 7) |
| KELSIE SHURTLIFF, | Case No. 21-40532-JMM  (Ch. 7) |
| MARISSA J. JOHNSON, | Case No. 21-40533-JMM  (Ch. 7) |
| CHRISTOPHER D. SMITH and MISTY SMITH, | Case No. 21-40540-JMM (Ch. 7) |
| ERIC R. WHITTEKIEND and SHARLA K. WHITTEKIEND, | Case No. 21-40557-JMM  (Ch. 7) |
| NATHAN S. TRACY, | Case No. 21-40563-JMM  (Ch. 7) |
| Debtors. | |

**Motion for Orders to Show Cause -  4**

## UNITED STATES TRUSTEE'S MOTION FOR
## MONETARY AND INJUNCTIVE REMEDIES

The Acting United States Trustee ("UST") hereby moves the Court to impose monetary

and injunctive remedies against attorney Kameron Youngblood ("Youngblood") due to lack of

compliance with §§ 329, 526, the Bankruptcy Rules of Federal Procedure ("Bankruptcy Rules"),

Local Bankruptcy Rules ("LBR"), and Idaho Rules of Professional Conduct ("IRPC"). The UST

identifies herein the dockets and documents in the above-captioned cases that warrant the

imposition of such remedies.

## I.     BACKGROUND

1.     On October 7, 2021, Chief Judge Meier held a hearing in the Larson Case on a

Motion for Monetary and Injunctive Remedies filed by the UST (the "Larson Case Motion").

2.     In the Larson Case Motion, the UST requested various remedies, including an

order for the return of fees in any pending case filed by Youngblood where it appears the

signatures filed on the docket were received by Youngblood's office via email, fax, or some

other electronic means.  In other words, where it appears Youngblood may not have obtained wet

signatures to retain in his files as required by Local Bankruptcy Rule ("LBR") 5003.1.

3.     In addition, Youngblood made certain statements during the October 7 hearing

that appeared to cause Chief Judge Meier concern over whether Youngblood was adequately

representing his clients in other open cases where he appears as counsel.

4.     Chief Judge Meier determined he did not have a sufficiently broad evidentiary

record at the close of the hearing in the Larson Case to impose a remedy in other currently

pending cases.  He also expressed due process concerns about whether, at the time of the October

7, 2021, hearing, Youngblood had sufficient notice and opportunity to respond to the potential

imposition of monetary or injunctive remedies in his other open cases.

**Motion for Orders to Show Cause -  5**

5.      To better assess the adequacy of Youngblood's representation of his clients in other open cases, and the extent to which some of the issues raised in the Larson Case hearing might be occurring in those cases, Chief Judge Meier requested the UST prepare a motion addressing those matters.  For the reasons set forth below, the UST believes broad monetary and injunctive remedies in connection with the above-captioned cases is appropriate.

## II.      REMEDIES UNDER § 329

Section 329(a) requires an attorney representing a debtor in a bankruptcy case to file a statement of compensation paid or agreed to be paid for legal services in connection with the bankruptcy case.  Section 329(b) permits the Court to cancel the agreement and order the return of funds to the extent the compensation exceeds the reasonable value of such services.

Section 329 reflects Congress's recognition that payments by a debtor to his or her attorney present a "serious potential for overreaching by the debtor's attorney" and that such payments should therefore be subjected to "careful scrutiny."  H.R. Rep. No. 95-595, at 329 (1977) (reprinted in 1978 U.S.C.C.A.N. 5963,6285).  Bankruptcy courts have broad discretion under § 329(b) to disallow and require return of attorney compensation found to be excessive.  *In re Columbia Plastics, Inc.*, 251 B.R. 580, 584-85 (Bankr. W.D. Wash. 2000) (citing *In re Fin. Corp. of Am.*, 114 B.R. 221, 224 (9th Cir. BAP 1990)), *aff'd*, 946 F.2d 689 (9th Cir. 2001); *In re Mahendra*, 131 F.3d 750, 757 (8th Cir. 1997).

Apart from standard considerations of reasonableness under factors mentioned in § 330(a)(3) (by analogy), courts have found compensation excessive, cancelled compensation agreements, and denied compensation under § 329 based on attorneys' misconduct or deficient representation.  As stated by the court in *In re Martin*, 197 B.R. 120, 125 (Bankr. D. Colo. 1996):

> a court's review of the reasonableness of compensation under
> § 329 is a holistic review of the entire attorney/debtor relationship.

> Compensation to a debtor's counsel may be considered excessive
> for a number of reasons including the size of the fee, the nature of
> the services provided, failure to disclose the information required
> by Rule 2016(b), unethical conduct or other causes.

In various cases, courts have determined compensation is excessive and agreements should be

cancelled based on violations of rules of professional conduct, *id.* at 128 (violations of Colorado

Rules of Professional Conduct 1.7, regarding conflicts of interest); and for violations of Local

Bankruptcy Rules, *In re Grimmett*, 2017 WL 2437231 at *11-12 (Bankr. D. Idaho June 5, 2017),

*aff'd*, No. 1:17-cv-00266-EJL (D. Idaho Feb. 16, 2018) ("[T]he value of a lawyer's services to a

debtor is reduced to nothing, or next to nothing, if those efforts include advising the debtor to

violate an order of the Court and a Local Rule.  In this case, under § 329(b), the Court will cancel

the Agreement and order a return of the amounts paid to Counsel by Debtor.").

The cancellation of agreements and the denial of compensation under § 329(b) is also an

appropriate sanction for an attorney's failure to comply with the disclosure obligations of

§ 329(a) and Rule 2016(b).  *See In re Blackburn*, 448 B.R. 28, 40-41 (Bankr. D. Idaho 2011)

(citing *In re Larson*, 04.1 I.B.C.R. 15, 16 (Bankr. D. Idaho 2004) ("[A]ny failure to comply with

[§ 329 and Rule 2016] is given a serious view by the Court, and may subject the attorney to

severe sanctions, including the loss of an attorney's fees earned in a case, disgorgement, or even

monetary sanctions.") (citation omitted)); *see also Turner v. Davis, Gellenwater & Lynch (In re

Inv. Bankers, Inc.)*, 4 F.3d 1556, 1565 (10th Cir. 1993); *SE Property Holdings, LLC v. Stewart

(In re Stewart),* 970 F.3d 1255, 1267 (10th Cir. 2020) ("That is not to say that full disgorgement

is always appropriate for failure to disclose under § 329.  But it should be the default sanction,

and there must be sound reasons for anything less.").

Attorneys representing a debtor in a bankruptcy case have an affirmative duty to fully and

completely disclose all fee arrangements and all payments.  *See* § 329(a); Rule 2016(b); *In re*

*Kowalski*, 402 B.R. 843, 849-50 (Bankr. N.D. Ill. 2009).  In this regard, attorney disclosures

must be "precise and complete."  *In re Berg*, 356 B.R. 378, 381 (Bankr. E.D. Pa. 2006) (internal

quotation omitted).  An attorney who fails to comply with the requirements of § 329(a) or Rule

2016(b) is subject to "forfeiture of 'any right to receive compensation for services rendered on

behalf of the debtor,' and the disgorgement of any funds already paid by the debtor."  *In re*

*McTyire*, 357 B. R. 898, 904 (Bankr. M.D. Ga. 2006), quoting *In re Woodward*, 229 B.R. 468,

473 (Bankr. N.D. Okla. 1999).  Even negligent or inadvertent failure to disclose fully relevant

information in a Rule 2016 statement may result in denial of all requested fees.  *Neben &*

*Starrett, Inc. v. Chartwell Financial Corp. (In re Park–Helena Corp.)*, 63 F.3d 877, 882 (9th Cir.

1995).

### III.    REMEDIES UNDER § 526

The Bankruptcy Code defines a "debt relief agency" as "any person who provides any

bankruptcy assistance to an assisted person in return for the payment of money or other valuable

consideration."  § 101(12A).  An "assisted person," in turn, is "any person whose debts consist

primarily of consumer debts and the value of whose nonexempt property is less than $204,425."

§ 101(3).  Youngblood is a debt relief agency in the context of his role as debtors' counsel.  *See*

*also Milavetz, Gallop & Milavetz, P.A. v. United States,* 559 U.S. 229, 232 (2010) (a bankruptcy

attorney falls within the definition of a "debt relief agency").  Exhibit A, attached hereto,

identifies whether the debtors in the above-captioned cases indicated their debts consist primarily

of consumer debts and identifies the value of each debtors' nonexempt property.  Each of the

debtors in the above-captioned cases is a person whose debts consist primarily of consumer debts

and the value of whose nonexempt property is less than $204,425.

If a debtor relief agency represents to an assisted person that it will provide certain

services in connection with a bankruptcy case, and then fails to perform those services, the debt

relief agency has violated § 526(a)(1).

A debt relief agency is also prohibited from:

> mak[ing] any statement, or counsel[ing] or advis[ing] any assisted
> person or prospective assisted person to make a statement in a
> document filed in a case or proceeding under this title, that is
> untrue or misleading, or that upon the exercise of reasonable care,
> should have been known by such agency to be untrue or
> misleading.

§ 526(a)(2).

And, a debt relief agency is prohibited from directly or indirectly misrepresenting (a) the

services it will provide to an assisted person or prospective assisted person or (b) the benefits and

risks that may result if such a person becomes a debtor in a bankruptcy case.  § 526(a)(3).

If the Court finds an attorney debt relief agency intentionally violated § 526 or has

engaged in a clear and consistent pattern or practice of violating § 526, it may enjoin the

violation and impose an appropriate civil penalty against the attorney.  *See* § 526(c)(5).  The

Code does not establish an amount or range for determining the amount of a civil penalty.  *See*

§ 526(c)(5)(B).  Rather, civil penalties should be designed to deter offending parties and others

from similar conduct in the future.  *In re Hanawahine*, 577 B.R. 573, 580 (Bankr. D. Haw.

2017)(citing *In re Huffman*, 505 B.R. 726, 766 (Bankr. S.D. Miss. 2014)).  Courts have imposed

penalties in varying amounts, based on the facts in each case, in exercising their discretion to

impose civil penalties sufficiently to deter offending conduct.  *See, e.g., Hills v. McDermott (In*

*re Wicker)*, 702 F.3d 874, 878 (6th Cir. 2012) (affirming a $5,000 civil penalty imposed by a

bankruptcy court on a debt relief agency under § 526(c)(5)); *In re Hanawahine*, 577 B.R. at 580

(imposing a $4,311 penalty equivalent to treble damages); *In re Huffman*, 505 B.R. at 766

(imposing a $28,000 penalty as four times the fees charged to the debtor); *see also U.S. v. Gulf*

*Park Water Co.,* 14 F.Supp.2d 854, 858 (S.D. Miss. 1998) (surveying methodology used by

courts in assessing amount of discretionary civil penalties under environmental laws and

concluding that civil penalty must be high enough so that party cannot write off penalty as an

acceptable trade-off for doing business).  The amount of any civil penalty should be sufficient to

serve as a deterrent against future improper conduct, but not be so burdensome as to be punitive.

*In re Huffman*, 505 B.R. at 766.

### IV.    JUSTIFICATION FOR MONETARY AND INJUNCTIVE REMEDIES

The dockets and documents filed in the above-captioned cases demonstrate problems in

four general areas:  (1) not obtaining and retaining wet signatures as required by LBR 5003.1; (2)

untimely filing schedules and other documents in violation of Rule 1007 and LBR 1007.2; (3)

violations of various Rules of Professional Conduct; and (4) using 2016(b) disclosures that (a)

mislead clients with regard to the services being provided and the fees being charged for

services, (b) mislead the Court in terms of the compensation being received by Youngblood, (c)

demonstrate the fees charged by Youngblood exceed the reasonable value of the services being

provided, and (d) demonstrate fee arrangements that create an impermissible conflict of interest

between Youngblood and his clients under the Idaho Rules of Professional Conduct.

### 1.   <u>Violations of Local Bankruptcy Rule 5003.1</u>

Local Bankruptcy Rule 5003.1 requires an attorney to obtain and retain an original

handwritten pen and ink signature ("wet signature"); an electronic signature is not sufficient.  *See*

*In re Grimmett*, 2017 WL 2437231 at *11.  The Local Bankruptcy Rule governs electronic case

filing, and provides:

> The original of all conventionally signed documents that are
> electronically filed shall be retained by the filing party for a period
> of not less than the maximum allowed time to complete any
> appellate process, or the time the case of which the document is a

part, is closed, whichever is later. The document shall be produced
upon an order of the court.

LBR 5003.1(e).

Under the Electronic Case Filing Procedures ("ECF PROCEDURES") adopted by the

Bankruptcy Court for the District of Idaho, an attorney "Registered Participant filing a Verified

Pleading electronically shall insure the electronic version conforms to the original, signed

pleading/document." *See* ECF PROCEDURES at 11 (Bankr. D. Idaho Jan. 16, 2006); General

Order No. 394, ELECTRONIC CASE FILING (Bankr. D. Idaho Apr. 9, 2021) (superseding General

Order No. 247).

When an attorney submits an electronically signed document to the Court, he is certifying

and affirmatively stating to the court that he has the document in his physical possession bearing

the original signature of the party. ECF PROCEDURES at 11; *In re Tran*, 427 B.R. 805, 808

(Bankr. N.D. Cal. 2010). The history and import of the ECF Procedures and LBR 5003.1(e)

were previously addressed by the Court in *In re Daw*:

> Because this Court was in one of the latter waves of the bankruptcy
> courts nationwide to implement ECF, it could and did draw upon
> other courts' procedures and practices. It implemented, by a
> General Order, the "ECF Procedures" and amended the Local
> Rules of the Court. *See* General Order 187 (Nov. 15, 2004); LBR
> 5003.1. Local Bankruptcy Rule 5003.1 was adopted and governed
> electronic filings, and it referred to and incorporated the ECF
> Procedures. Among other things, LBR 5003.1 addressed the
> subject of signatures:
>
> > **(j) Signatures.**
> > The electronic filing of any document by a Registered
> > Participant shall constitute the signature of that person for
> > all purposes provided in the Federal Rules of Bankruptcy
> > Procedure. For instructions regarding electronic
> > signatures, refer to the ECF Procedures.
>
> *See also* General Order 187 at 11.

The Procedures, in turn, created a process for the electronic filing of verified pleadings under Fed. R. Bankr. P. 1008.  Under the ECF Procedures, at 13.A:

> A Registered Participant filing a Verified Pleading electronically shall insure that the electronic version conforms to the original, signed pleading/document. Each signature on the original, signed pleading/document shall be indicated on the electronically filed Verified Pleading with the typed name on the signature line of the person purported to have signed the pleading/document. The electronic filing of a Verified Pleading **constitutes a representation by the Registered Participant that he or she has the original, signed document in his or her possession at the time of filing**.  The Registered Participant shall retain the Verified Pleading for a period of not less than the maximum allowed time to complete any appellate process, or the time the case or Adversary Proceeding of which the document is a part, is closed, whichever is later.  The document shall be produced upon an order of the Court.

> Thus, the Registered Participant (*i.e.*, the lawyer) must insure that the electronic version filed through ECF conforms exactly to the written version of the physically signed document (*e.g.*, petition, schedule, statement, plan, and any amendments thereto).  By electronically filing documents, the Registered Participant is representing he or she actually has the original, signed document in his or her possession.

*In re Daw*, 2011 WL 231362 at *1-2 (Bankr. D. Idaho Jan. 24, 2011) (bold "(j) Signatures" in original, other emphasis added).

The import of an attorney electronically filing a signed document without having the signature page in his possession has also been described by this court as follows: "an attorney's electronic submission of a document to the Court inaccurately 'purporting to have [a party's] signature is no different than [the attorney] physically forging [the party's] signature and handing the [document] over the counter to the clerk.'"  *In re Hurd*, 2010 WL 3190752 at *3 (Bankr. D. Idaho Aug. 11, 2010) (quoting *In re Wenk*, 296 B.R. 719, 725 (Bankr. E.D. Va. 2002)).

In short, if an attorney does not have the original wet ink signature page of a document in his possession when he represents to the Court, via electronic filing of the document, that he has the original in his possession, such is an untrue or misleading statement, and the attorney is subject to penalties due to violation of §526(a)(2).  At the very least, the attorney's non-compliance with LBR 5003.1 requires the return of any fees under § 329(b).

It appears Youngblood failed to comply with LBR 5003.1(e) in the following cases because the signature pages filed with the Court appear to be photographs of signature pages that were either emailed, texted, or otherwise provided to Youngblood.  In other words, it does not appear Youngblood physically obtained, and is retaining, the original wet ink signatures:

| Case Number | Debtor | Documents with Photographed Signature Pages | Docket Nos. |
|---|---|---|---|
| 20-00634-NGH | Christopher Lee Allen and Haley Cherie Allen | Petition | 8 |
| 20-00784-NGH | Rebecca Lynn Estraca | Declaration re Schedules; Statement of Financial Affairs; Statement of Intention; Statement of CMI | 19; 20 |
| 20-00915-NGH | Eugene Swinhart | Declaration re Schedules; Statement of Financial Affairs; Statement of Intention; Statement of CMI | 12; 17 |
| 20-01004-JMM | Heather Manning | Petition; Declaration re Schedules; Statement of Financial Affairs; Statement of Intention | 9 |
| 20-01047-JMM | Dominique Wilson | Petition; Declaration re Schedules; Statement of Financial Affairs; Statement of Intention; Statement of CMI | 7; 17; 18 |
| 20-40902-JMM | Tara Dawn MacTaggart | Petition; Declaration re Schedules; Statement of Financial Affairs; Statement of Intention; Statement of CMI | 9 |
| 20-40915-JMM | Christy L. Phipps | Petition; Declaration re Schedules; Statement of Financial Affairs; Statement of Intention; Statement of CMI | 7; 16 |
| 21-00512-NGH | Jamie Poole | Petition; Declaration re Schedules; Statement of Financial Affairs; Statement of Intention | 8; 17 |
| 21-40002-JMM | Lauren Dawn Rivera | Petition; Declaration re Schedules; Statement of Financial Affairs; Statement of Intention | 9 |
| 21-40476-JMM | Cameron Ward and Melissa Heath | Declaration re Schedules; Statement of Financial Affairs; Statement of Intention; Statement of CMI | 17; 18 |
| 21-40513-JMM | Christopher Cook and Tausha Cook | Petition; Declaration re Schedules; Statement of Financial Affairs; Statement of Intention | 9; 13 |
| 21-40533-JMM | Marissa J. Johnson | Petition | 9 |
| 21-40557-JMM | Eric R. Whittekiend and Sharla K. Whittekiend | Petition | 8 |
| 21-40563-JMM | Nathan S. Tracy | Petition | 8 |

**Motion for Orders to Show Cause -  13**

It appears Youngblood failed to comply with LBR 5003.1(e) in the following additional cases because the signature pages appear to be signed electronically, through DocuSign or some similar service, rather than by an original wet ink signature:

| Case Number | Debtor | Documents with Photographed Signature Pages or Electronic Signatures | Docket Nos. |
|---|---|---|---|
| 21-40482-JMM | Britni Howe and Cassie Howe | Declaration re Schedules (Electronic); Statement of Financial Affairs (Electronic); Statement of Intention (Electronic) | 13 |
| 21-40521-JMM | Eric W. Horton and Randalee M. Browyer | Petition (Photograph); Declaration re Schedules (Electronic); Statement of Financial Affairs (Electronic); Statement of Intention (Electronic) | 9; 15 |

For the *In re Howe* case, the signature page for the Petition appears to include a handwritten signature. *See* Bankr. No. 21-40482-JMM, Dkt. No. 8. Docket No. 13, however, includes purported signature pages where the signatures do not match the signatures on the Petition and appear to have been electronically generated or signed. *Compare id.,* Dkt. No. 8 *with id.,* Dkt. No. 13. For the *In re Horton* case, the signature page for the Petition is a photograph of what appears to be a handwritten signature. *See* Bankr. No. 21-40521-JMM, Dkt. No. 9. Docket No. 15 includes purported signature pages with signatures that do not match the signatures on the Petition and appear to have been electronically generated or signed. *Compare id.,* Dkt. No. 9 *with id.,* Dkt. No. 15.

There are six other cases with additional signature-related issues that are of concern given a debtor's attorney's responsibilities and representations under LBR 5003.1, Idaho's ECF Procedures, and the case law interpreting the same:

*In re Andreasen*, 19-40324-JMM

| Case Number | Debtor | Documents with Photographed Signature Pages | Docket Nos. |
|---|---|---|---|
| 19-40324-JMM | Brian Andreasen and Kathryn A. Andreasen | Declaration re Schedules; Statement of Financial Affairs | 19 |

In the *In re Andreasen* case, a document was filed purporting to be the signatures of the

debtors for the Declaration About an Individual Debtor's Schedules and the Statement of

Financial Affairs.  Bankr. No. 19-40324-JMM, Dkt. No. 19.  The document is a photograph of

two signature pages and is of poor quality.  *See id.*  Upon inspection, the photographs are not of

signature pages signed by the Andreasens, but are photographs of signature pages signed by

debtors in another case entirely,[1] filed by Youngblood as a representation the signatures belong

to the Andreasens.  *Id.*  There are no signatures on file for the Andreasens, whether photographic

representations or otherwise, for their Schedules or Statements of Financial Affairs.  *Id.*  And, the

document that was filed as the debtors' signature pages is untrue and misleading.  *Id.*

*In re Margeson*, 20-00760-NGH

| Case Number | Debtor | Documents with Photographed Signature Pages | Docket Nos. |
|---|---|---|---|
| 20-00760-NGH | Morris Adair Margeson | Declaration re Schedules; Statement of Financial Affairs; Statement of CMI | 18, 19 |

In the *In re Margeson* case, all of the above-identified documents include only

photographic representations of the debtor's signature.  Bankr. No. 20-00760-NGH, Dkt. No.19.

The filed Statement of Current Monthly Income, into which the debtor's signature page was

inserted,[2] presumably by Youngblood, is the Statement of Current Monthly Income for a Mark

Caleb Lyons, the debtor in Bankr. No. 20-40629-JMM.  *Id.*  As a result, the filed document is an

untrue and misleading representation of the debtor's Statement of Current Monthly Income –

while the signature page is a photo of the debtor's signature, much of the information and

calculations in the document are not the debtor's, but are, presumably, Mr. Lyons'.  *Id.*

---

[1] The signatures appear to be for a Brian and Ashley Allen, Bankr. No. 19-40323-JMM.  The same signature pages were filed in the Allens' bankruptcy case.  *See id.*, Dkt. No. 19.  In other words, there was no switch, where the Andreasens' signature pages were filed in the Allens' bankruptcy case and vice-versa; the Andreasens' signature pages do not appear to have been filed anywhere.
[2] While the signature page inserted into the document is a photographic representation, the pages before and after the signature page are not.  *See* Bankr. No. 20-00760-NGH, Dkt. No.19.  In other words, it appears someone inserted the photo of the debtor's signature page into the middle of a .pdf of someone else's Statement of Current Monthly Income.

*In re Phipps*, 21-40100-JMM

| Case Number | Debtor | Documents with Photographed Signature Pages | Docket Nos. |
|---|---|---|---|
| 21-40100-JMM | Lisa M. Phipps | Petition; Declaration re Schedules; Statement of Financial Affairs; Statement of Intention; Statement of CMI | 6; 14; 15 |

In the *In re Phipps* case, the documents identified above are photographic representations. Of additional concern, however, are various verified statements regarding the debtor's domestic support obligations. *See* Bankr. No. 21-40100-JMM, Dkt. Nos. 5, 16, 18. On February 17, 2021, the debtor filed a Statement of Domestic Support Obligation on which she marked that she did not have a domestic support obligation. *Id.*, Dkt. No. 5. At the same time, the debtor's Statement included information for a party that held a claim of support against her. *Id.* The document was a photographic representation of the actual Statement and the signature in the photograph was dated February 10, 2021. *Id.*

On February 17, 2021, the Court entered the following on the docket:

> Corrective Action: It appears the form has not been completely filled out. Counsel to please re-file completed document. (It appears the form was marked as having no domestic obligations. However, it does appear there are domestic obligations.) (RE: related document(s)5 Statement of Domestic Support Obligations filed by Debtor Lisa M. Phipps) Corrective Action due by 2/22/2021. (ck)

*Id.*, Docket Entry of Feb. 17, 2021.

On March 3, 2021, nine days after the corrective entry deadline, Youngblood filed another Statement for the debtor (the "First Revised Statement"). *Id.*, Dkt. No. 16. The First Revised Statement was, again, a photograph, had crossed out the indication there was no domestic support order, marked there was such an order, and included handwriting indicating (a) the debtor did not know the claim holder's address and (b) the order had not been entered by a

court.[3]  *Id.*  The signature on the First Revised Statement was dated February 10, 2021, and it appears the debtor either did not sign the First Revised Statement once changes were made to the initial Statement or she back-dated the First Revised Statement to the date of the initial Statement.  *Id.*

Then, on March 28, 2021, Youngblood filed another Statement for the debtor (the "Second Revised Statement").  *Id.*, Dkt. No. 18.  The Second Revised Statement appears to be exactly the same as the initial Statement, even including the same date next to the signature.  *Id.*  But, now, someone had typed the missing information onto the top of the photograph in blue font.  *Id.*  Confusingly, the Second Revised Statement indicates the debtor both has a domestic support obligation and that she does not have such an obligation – both "boxes" are checked, one in the original font and the second in the later-added blue font.  *Id.*  Given that it appears the debtor did not sign either of the First Revised Statement or the Second Revised Statement at the time those documents were prepared (or at the time the initial document was altered), the accuracy of those statements being produced and attested to by the debtor is suspect.  *See id.*, Dkt. Nos. 5, 16, 18.

To the extent the series of Statements of Domestic Support Obligations filed by Youngblood purport to be the original documents signed by the debtor, such representations appear to be untrue and misleading.

*In re Randall*, 21-40374-JMM

| Case Number | Debtor | Documents with Photographed Signature Pages | Docket Nos. |
|---|---|---|---|
| 21-40374-JMM | Kristi M. Randall | Declaration re Schedules; Statement of Financial Affairs; Statement of Intention; Statement of CMI | 16; 18 |

---

[3] For the entry "Court name and jurisdiction in which order of support was issued:" someone hand wrote "N/A." Bankr. No. 21-40100-JMM, Dkt. No. 16.  For the entry "Court Case No.," someone again hand wrote "N/A."  *Id.*

For the *In re Randall* case, the above-identified documents are all photographic representations of signature pages.  In addition, a document purporting to be the debtor's signature page for the Petition was filed on June 23, 2021.  Bankr. No. 21-40374-JMM, Dkt. No. 8.  While that document contains photographs of two signature pages, both signature pages are for other documents, and neither is for the Petition.  *Id.*

On June 23, 2021, the Court entered the following on the docket:

> Corrective Action:  You are receiving this notice because the original signature page was not filed at the same time as the electronically filed document.  Please file the signature page for the Voluntary Petition page 6, electronically through ECF.  For further information/procedures, visit our website at www.id.uscourts.gov.  (RE: related document(s)1 Voluntary Petition (Chapter 7) filed by Debtor Kristi M. Randall)  Corrective Action due by 6/28/2021.  (ck)

*Id.*, Docket Entry of June 23, 2021.  On July 1, 2021, the Court made the following docket entry:

> SECOND Corrective Action:  You are receiving this notice because the original signature page was not filed at the same time as the electronically filed document.  Please file the signature page for the Voluntary Petition page 6, electronically through ECF.  For further information/procedures, visit our website at www.id.uscourts.gov.  (RE: related document(s)1 Voluntary Petition (Chapter 7) filed by Debtor Kristi M. Randall)  Corrective Action due by 7/6/2021.  (kll)

*Id.*, Docket Entry of July 1, 2021.

On July 20, 2021, two weeks after the deadline in the second corrective action entry, Youngblood filed what was supposed to be an "Addendum/Supplement, Signature page(s)."  *Id.*, *see* Docket Entry for Dkt. No. 15.  The document, however, only includes a June 22, 2021, signature of Youngblood – it does not include the debtor's signature.  *See id.*, Dkt. No. 15.  The debtor's signature, through a photographic representation or otherwise, has still not been provided for the Petition.  *See id.*  The documents represented by Youngblood as being the

debtor's signature on the Petition are untrue and misleading as none of them include the debtor's

signature or even a photographic representation of that signature.

*In re Plicka*, 21-40525-JMM

In the *In re Plicka* case, the debtors filed their Petition, Schedules, Statement of Financial

Affairs and other documents on September 7, 2021.  Bankr. No. 21-40525-JMM, Dkt. No. 1.

That same day they filed a document containing signature pages.  *Id.*, Dkt. No. 10.  While

signature pages for most of the documents were included, a signature page for the Statement of

Financial Affairs was not.

On September 8, 2021, the Court made the following docket entry:

> Corrective Action:  You are receiving this notice because the
> original signature page was not filed at the same time as the
> electronically filed document.  Please file the signature page for
> the Statement of Financial Affairs, electronically through ECF.
> For further information/procedures, visit our website at
> www.id.uscourts.gov.  (RE: related document(s)1 Voluntary
> Petition (Chapter 7) filed by Debtor Cody W Plicka, Joint Debtor
> Angele M Plicka)  Corrective Action due by 9/13/2021.  (ck)

*Id.*, Docket Entry of Sept. 8, 2021.  Nearly a month later, on October 7, 2021, the Court entered

an additional docket entry:

> SECOND Corrective Action:  You are receiving this notice
> because the original signature page was not filed at the same time
> as the electronically filed document.  Please file the signature page
> for the Statement of Financial Affairs, electronically through ECF.
> For further information/procedures, visit our website at
> www.id.uscourts.gov.  (RE: related document(s)1 Voluntary
> Petition (Chapter 7) filed by Debtor Cody W Plicka, Joint Debtor
> Angele M Plicka)  Corrective Action due by 10/12/2021.  (ad)

*Id.*, Docket Entry of Oct. 7, 2021.

As of today's date, a signature page bearing the debtors' signatures for the Statement of

Financial Affairs has not been filed.  The statement and representation that Youngblood had an

original, signed copy of the Statement of Financial Affairs on September 7, 2021, then, appears to be untrue and misleading.  If he had the original, signed document in his possession, it would have been an easy task for him to have scanned and filed the signature page in response to the Court's corrective entries.

<u>*In re Ellwood*, 21-40517-JMM</u>

In the *In re Ellwood* case, the debtors filed two sets of signature pages:  one for the Petition and related documents, Dkt. No. 9, and one for the Schedules, Statement of Financial Affairs, and Statement of Intention, Dkt. No. 18.  *See* Bankr. No. 21-40517-JMM.  The signatures associated with each set of signature pages, however, differ widely between the two sets of documents.  *Compare id.*, Dkt. No. 9 *with id.*, Dkt. No. 18.  It is unclear which, if either, is the actual signature of the debtors.

The UST has not identified every above-captioned case in this subsection of the Motion, only those cases where it was most obvious the wet ink signatures did not appear to be on file or where there are other signature-related concerns.  At the same time, there are other cases where it is simply impossible to tell whether the filed signature is a scan of an original wet ink signature page or not.  And, even where signature pages appear to be scans of wet ink signatures, as opposed to photographs, the debtors may have scanned the pages and sent the electronic copy to Youngblood without ever sending the original, signed pages to him.

It appears Youngblood has violated the requirements of § 526(a)(2).  And there appears to be a clear and consistent pattern or practice by Youngblood of violating § 526(a)(2) by making untrue or misleading statements regarding his possession of original signature pages.  In several cases, the debtors have filed untrue and misleading statements because the signature pages filed by Youngblood are not the debtors' signatures or there are other problems related to the

signature pages.  The imposition of monetary and injunctive remedies under § 526(c)(5), therefore, appears appropriate.  Remedies under § 329(b) also appear appropriate due to non-compliance with LBR 5003.1.

**2.  <u>Untimeliness of Filings and Violations of Bankruptcy Rule 1007</u>**

Bankruptcy Rule 1007 governs the filing of Lists, Schedules, Statements, and other documents with the Court.  Rule 1007(b) identifies what Schedules, Statements, and other documents are required, and Rule 1007(c) specifies the time limits within which such documents must be filed.  For known assets at the time a debtor files a Chapter 7 petition, a debtor's Schedules and Statement of Financial Affairs "shall be filed with the petition or within 14 days thereafter."  Rule 1007(c).

Rule 1007(c) allows courts to extend the 14-day time limit but "only on motion for cause shown" and with notice to the UST and others.  In Idaho, LBR 1007.2 identifies the specific information a motion for extension of time must include.  Local Bankruptcy Rule 1007.2 also specifies that, unless the Court orders otherwise for cause shown, the time for filing the schedules, statements, and other required documents will not be granted beyond the date set for the § 341(a) meeting of creditors.

Among the duties of a Chapter 7 trustee are duties to liquidate property of the estate and to investigate the financial affairs of the debtor.  *See* § 704(a).  A debtor's Schedules, Statement of Financial Affairs, and the § 341(a) meeting of creditors are all tools a trustee can use in fulfilling those duties.  If the Schedules and Statements of Financial Affairs in a case are not filed in a timely manner and the Chapter 7 trustee does not have the time afforded by Rule 1007 to review those documents, the trustee may not be able to adequately prepare for the § 341 meeting

and may be hindered or delayed in his ability to fulfill his duties under the Code.  Such can add

unnecessary cost and delay to the administration of cases and estates.

Chapter 7 trustees, the UST, and other parties in interest also have a relatively short

window for filing a complaint or motion seeking the denial of discharge under § 727.  *See* Rule

4004(a).  The time for filing such a complaint or motion is calculated from the first date set for a

§ 341 meeting of creditors.  *Id.*  The § 341 meeting of creditors provides an opportunity for

parties in interest to further explore potential grounds for a denial of discharge that may have

been exposed in the Schedules, Statements, and other documents.  A delay in the filing of the

required Schedules, Statements, and other documents prejudices all parties in interest who may

be analyzing potential § 727(a) actions.  The longer the delay, the greater the prejudice.

Additional serious consequences can attach to the non-filing of Schedules and Statements

of Financial Affairs.  Debtors are duty-bound to file such documents.  *See* § 521(a).  And, if the

documents are not filed within 45 days after the date of the petition, a case is required to be

automatically dismissed on the 46th day after the petition date.  § 521(i).

Youngblood's open cases show a pattern of disregard for Rule 1007 and LBR 1007.2.

Youngblood did not file the debtors' Schedules or Statements of Financial Affairs within the

required 14 days, and did not move for an extension of time for the filing of such documents, in

the following cases:

| Case Number | Debtor | Date Petition Filed | 14-day Deadline for Filing Schedules and Statements | Schedules and Statements Filed* | Days After the Petition Date Schedules Were Filed | Days After the 14-day Deadline Schedules Were Filed |
|---|---|---|---|---|---|---|
| 21-00248 -JMM | Hannah Joy Cain | 4/15/2021 | 4/29/2021 | 7/6/2021 | 82 | 68 |
| 21-40497-JMM | Chad N. Moxley and Toni L. Moxley | 8/24/2021 | 9/7/2021 | | over 52 days | over 38 days |
| 20-01047-JMM | Dominique Wilson | 12/9/2020 | 12/23/2020 | 1/14/2021 | 36 | 22 |

| 21-40532-JMM | Kelsie Shurtliff | 9/10/2021 | 9/24/2021 | | over 35 days | over 21 days |
| 21-40533-JMM | Marissa J. Johnson | 9/10/2021 | 9/24/2021 | | over 35 days | over 21 days |
| 21-00512-NGH | Jamie Poole | 8/5/2021 | 8/19/2021 | 9/8/2021 | 34 | 20 |
| 19-40972-JMM | Lyone B. Overlin and Rebecca J. Overlin | 10/10/2019 | 10/24/2019 | 11/12/2019 | 33 | 19 |
| 21-40162-JMM | Kendrick N. Pereira | 3/18/2021 | 4/1/2021 | 4/19/2021 | 32 | 18 |
| 21-40286-JMM | Hunter B. Soliday | 5/7/2021 | 5/21/2021 | 6/8/2021 | 32 | 18 |
| 20-00634-NGH | Christopher Lee Allen and Haley Cherie Allen | 7/13/2020 | 7/27/2020 | 8/13/2020 | 31 | 17 |
| 21-40540-JMM | Christopher D. Smith and Misty Smith | 9/14/2021 | 9/28/2021 | | over 31 days | over 17 days |
| 21-40374-JMM | Kristi M. Randall | 6/23/2021 | 7/7/2021 | 7/20/2021 | 27 | 13 |
| 20-40961-JMM | Tyron L. Bates and MeaGan Bennett | 12/15/2020 | 12/29/2020 | 1/8/2021 | 24 | 10 |
| 21-40557-JMM | Eric R. Whittekiend and Sharla K. Whittekiend | 9/22/2021 | 10/6/2021 | | over 23 days | over 9 days |
| 21-40563-JMM | Nathan S. Tracy | 9/23/2021 | 10/7/2021 | | over 22 days | over 8 days |
| 19-40683-JMM | Peter Michael Lesbo | 7/22/2019 | 8/5/2019 | 8/12/2019 | 21 | 7 |
| 20-40915-JMM | Christy L. Phipps | 11/25/2020 | 12/9/2020 | 12/16/2020 | 21 | 7 |
| 21-40460-JMM | Samantha M. Whitworth | 8/2/2021 | 8/16/2021 | 8/21/2021 | 19 | 5 |
| 21-40466-JMM | Joshua T. Claunch and Anika D. Claunch | 8/3/2021 | 8/17/2021 | 8/21/2021 | 18 | 4 |
| 21-40467-JMM | Ashlee M. Croasmun | 8/3/2021 | 8/17/2021 | 8/21/2021 | 18 | 4 |
| 19-40730-JMM | Stephen and Danielle Pichette | 8/2/2019 | 8/16/2019 | 8/19/2019 | 17 | 3 |
| 20-01063-JMM | Leslie A. Settles | 12/15/2020 | 12/29/2020 | 1/1/2021 | 17 | 3 |
| 20-00784-NGH | Rebecca Lynn Estraca | 8/25/2020 | 9/8/2020 | 9/10/2020 | 16 | 2 |

*For cases where Statements and Schedules have not yet been filed, the "Days After the Petition" and "Days After the 14-day Deadline" columns were calculated from October 15, 2021.

Sometimes the required documents have not been filed until after the initial § 341

meeting of creditors.  Trustees, who rely on the Schedules and Statements in preparing for such

meetings, have no opportunity to prepare in those cases.  In many other cases, the Schedules and

Statements were filed just days prior to the initial § 341 meetings.  The UST recognizes that, in some cases with late-filed Schedules and Statements, the documents were filed to allow a few weeks' time to review.  Even in those cases, however, if a trustee has organized his practice in a manner to look at cases based on the 14-day deadline imposed by Rule 1007, any unexcused delay in such filing negatively impacts the trustee's ability to efficiently review cases, Schedules, and Statements, and to prepare for the § 341 meeting.  Parties reviewing potential § 727(a) actions are also negatively impacted.

The relationship between the filing date of the Schedules and Statements and the date set for the initial § 341 meeting in each of the cases where Schedules and Statements were filed late, or have not been filed yet, is set forth below:

| Case Number | Debtor | Date Petition Filed | 341 Meeting Date | Schedules and Statements Filed* | Days Before/ (After) First § 341 Mtg Schedules Were Filed |
|---|---|---|---|---|---|
| 21-00248 -JMM | Hannah Joy Cain | 4/15/2021 | 5/20/2021 | 7/6/2021 | (47) |
| 21-40497-JMM | Chad N. Moxley and Toni L. Moxley | 8/24/2021 | 9/30/2021 | | (at least 15 days) |
| 21-40532-JMM | Kelsie Shurtliff | 9/10/2021 | 10/6/2021 | | (at least 9 days) |
| 21-40533-JMM | Marissa J. Johnson | 9/10/2021 | 10/14/2021 | | (at least 1 day) |
| 20-01047-JMM | Dominique Wilson | 12/9/2020 | 1/14/2021 | 1/14/2021 | 0 |
| 21-00512-NGH | Jamie Poole | 8/5/2021 | 9/9/2021 | 9/8/2021 | 1 |
| 21-40286-JMM | Hunter B. Soliday | 5/7/2021 | 6/9/2021 | 6/8/2021 | 1 |
| 21-40374-JMM | Kristi M. Randall | 6/23/2021 | 7/21/2021 | 7/20/2021 | 1 |
| 21-40162-JMM | Kendrick N. Pereira | 3/18/2021 | 4/21/2021 | 4/19/2021 | 2 |
| 19-40972-JMM | Lyone B. Overlin and Rebecca J. Overlin | 10/10/2019 | 11/18/2019 | 11/12/2019 | 6 |
| 20-00634-NGH | Christopher Lee Allen and Haley Cherie Allen | 7/13/2020 | 8/20/2020 | 8/13/2020 | 7 |
| 19-40683-JMM | Peter Michael Lesbo | 7/22/2019 | 8/19/2019 | 8/12/2019 | 7 |
| 21-40460-JMM | Samantha M. Whitworth | 8/2/2021 | 9/1/2021 | 8/21/2021 | 11 |
| 21-40466-JMM | Joshua T. Claunch and Anika D. Claunch | 8/3/2021 | 9/1/2021 | 8/21/2021 | 11 |
| 21-40467-JMM | Ashlee M. Croasmun | 8/3/2021 | 9/1/2021 | 8/21/2021 | 11 |

| | | | | | |
|---|---|---|---|---|---|
| 21-40540-JMM | Christopher D. Smith and Misty Smith | 9/14/2021 | 10/27/2021 | | less than 12 days |
| 21-40563-JMM | Nathan S. Tracy | 9/23/2021 | 10/27/2021 | | less than 12 days |
| 21-40557-JMM | Eric R. Whittekiend and Sharla K. Whittekiend | 9/22/2021 | 10/28/2021 | | less than 13 days |
| 20-01063-JMM | Leslie A. Settles | 12/15/2020 | 1/14/2021 | 1/1/2021 | 13 |
| 19-40730-JMM | Stephen and Danielle Pichette | 8/2/2019 | 9/4/2019 | 8/19/2019 | 16 |
| 20-40961-JMM | Tyron L. Bates and MeaGan Bennett | 12/15/2020 | 1/27/2021 | 1/8/2021 | 19 |
| 20-40915-JMM | Christy L. Phipps | 11/25/2020 | 1/6/2021 | 12/16/2020 | 21 |
| 20-00784-NGH | Rebecca Lynn Estraca | 8/25/2020 | 10/1/2020 | 9/10/2020 | 21 |

*For cases where Schedules and Statements have not yet been filed, the "Days Before/(After) First § 341 Mtg" is calculated from October 15, 2021.

At least two of Youngblood's clients' open cases could have been automatically dismissed under § 521(i). In the case of *In re Cain*, the Schedules and Statements were not filed until 82 days after the Petition date. In the case of *In re Moxley*, as of October 15, 2021, the case was now 52 days past the Petition date without filed Schedules and Statements. Given the number of cases referenced in this Motion, it is possible (or even probable) the delay in filing Schedules, Statements, and other documents has been caused by counsel's, and not the debtor's, conduct. As such, this Motion should not be construed as a request by the UST that any cases be automatically dismissed under § 521(i). Nevertheless, Youngblood's conduct in not complying with required deadlines continues to put his clients at great risk.

Youngblood's non-compliance with Rule 1007 and LBR 1007.2 is sufficient grounds and cause for the reduction or return of fees under § 329(b) in the above-captioned cases.

### 3. <u>Violations of Idaho Rules of Professional Conduct</u>

Youngblood's violation of certain IRPC indicates the compensation received in the above-captioned cases is not reasonable and should be reduced or returned under § 329(b).

#### a. *Violations of Rules of Professional Conduct 1.3 and 1.4*

The IRPC are "designed to provide guidance to lawyers and to provide a structure for

regulating conduct" as well as to "establish standards of conduct by lawyers."  IRPC, SCOPE.  In

specific, IRPC 1.3, which establishes the standard for an attorney's diligence, provides:

> A lawyer shall act with reasonable diligence and promptness in
> representing a client.

As such, an attorney should pursue matters on behalf of his client despite any opposition,

obstruction, or personal inconvenience to the lawyer.  IRPC 1.3, cmt. 1.  Lack of diligence by an

attorney can result in adverse consequences for a client, and, at the very least, can cause a client

needless anxiety and to question the attorney's trustworthiness.  *Id.* at cmt. 3.

IRPC 1.4 establishes standards relating to an attorney's communication and provides:

> (a) A lawyer shall:
> (1) promptly inform the client of any decision or circumstance with
>     respect to which the client's informed consent, as defined in
>     Rule 1.0(e), is required by these Rules;
> (2) reasonably consult with the client about the means by which
>     the client's objectives are to be accomplished;
> (3) keep the client reasonably informed about the status of the
>     matter;
> (4) promptly comply with reasonable requests for information;
>     including a request for an accounting as required by Rule
>     1.5(f); and
> (5) consult with the client about any relevant limitation on the
>     lawyer's conduct when the lawyer knows that the client
>     expects assistance not permitted by the Rules of Professional
>     Conduct or other law.
> (b) A lawyer shall explain a matter to the extent reasonably necessary
>     to permit the client to make informed decisions regarding the
>     representation.

Regular communication by an attorney to his client will minimize the occasions on which the

client needs to request information concerning the representation.  IRPC 1.4, cmt. 4.  If a client

makes a reasonable request for information, IRPC 1.4 requires a prompt response to the request –

either providing the requested information or acknowledging the receipt of the request and

advising the client when a response providing the information can be expected. *Id.*

There are several issues in some of the above-captioned cases and other, closed cases which indicate Youngblood is not fulfilling his duties of diligence and communication in his cases, and that action by the Court is warranted:

*In re Willman*, 20-41549-JMM

The *In re Willman* case is a case that closed on October 20, 2020. *See* Bankr. No. 20-40549-JMM, Dkt. No. 18. The Chapter 7 trustee was discharged from the case at the time of closure. *Id.* Youngblood represented the debtors in the *Willman* case.

For some reason, Youngblood filed Amended Schedules for the debtors in August 2021. *See id.*, Dkt. No. 21.

On October 12, 2021, the UST was contacted by the office of the former Chapter 7 trustee in the *In re Willman* case, Sam Hopkins, indicating the debtors were contacting the trustee with questions regarding their income tax refund. The debtors indicated to the trustee's office that they had been unable to get Youngblood to return their calls for several months. The debtors reported to the trustee and the trustee confirmed that, as of October 12, 2021, Youngblood's office phone had been disconnected. On October 18, 2021, the UST called (208) 525-3328, the number identified by Youngblood on the Idaho State Bar website as his office phone number and verified the number has been disconnected.

Youngblood's clients who communicate with him telephonically are no longer able to do so.

*In re Poole*, 21-00512-NGH

While Youngblood commenced this case for the debtor, the debtor filed a Notice of Termination of Counsel and Designation of New Counsel on October 13, 2021. Bankr. No. 21-00512-NGH, Dkt. No. 19. In that Notice, the debtor states:

> Debtor has attempted to contact Mr. Youngblood concerning their
> (sic) case but has received no communication from his office.
> Debtor has had her 341 meeting continued twice. To ensure that
> her case proceeds, Debtor has contacted Avery Law to represent
> her for the duration of her bankruptcy case.

*Id.*

One of the referenced § 341 meetings was held on October 7, 2021, the same date as the

hearing on the Larson Case Motion. Youngblood did not appear at the § 341 meeting, but his

client did. Neither the Chapter 7 trustee nor the debtor had received any communication from

Youngblood indicating he would not be present at the meeting or requesting a continuance.[4]

Youngblood's failure to appear at § 341 meetings, non-communication with his clients

regarding the same, and his overall lack of communication with clients, as demonstrated in the

language of the Notice of Termination of Counsel all indicates a lack of compliance with IRPC

1.3 and 1.4.

*In re Christensen*, 21-40477-JMM

Youngblood commenced this case for the debtors on August 11, 2021. Bankr. No. 21-

40477-JMM, Dkt. No. 1. The debtors did not file their Schedules, Statements, and other

documents by the 14-day deficiency deadline. On August 27, 2021, the Court requested a status

update on the deficient documents by September 1, 2021. *Id.* Docket Entry of Aug. 27, 2021.

The debtors did not file any status update. After being contacted by the Chapter 7 trustee, Sam

Hopkins, about concerns in the case, the UST filed a Motion to Dismiss the case due to the

debtors' non-filing of required documents. *See id.*, Dkt. No. 18.

In response to the Motion to Dismiss, the debtors left a message with the UST's office.

Because the debtors were represented by Youngblood, the UST did not return their call but sent

---

[4] The trustee nonetheless continued the meeting because of the non-presence of the debtor's attorney.

Youngblood an email requesting he contact the debtors or provide the UST permission to call the

debtors to discuss the case directly with them.  To date, Youngblood has not responded to the

UST's email.

On September 17, 2021, the debtors filed a Notice of Termination of Counsel and

Designation of New Counsel.  *Id.*, Dkt. No. 19. In that Notice, the debtors state:

> Debtor has (sic) attempted to contact Mr. Youngblood concerning
> their case but has received no communication from his office.
> Debtors have a pending Motion to Dismiss their Chapter 7
> bankruptcy and have hired Avery Law to represent them to remedy
> the issues presented in the Motion to Dismiss as well as represent
> them in their remaining term of the Chapter 7 bankruptcy.

*Id.*

Schedules, Statements, and other documents were promptly filed once new counsel

appeared in the case.  *Id.*, Dkt. Nos. 21-25.  The Motion to Dismiss was thereafter withdrawn.

*Id.*, Dkt. No. 31.  Youngblood's lack of diligence and communication with his clients continues

to put his client's cases and discharges at risk.

*In re Wheeler*, 20-00532-NGH
*In re Martinez*, 21-00201-JMM

These cases were closed without a discharge because the debtors did not file a Financial

Management Course Certification (Form 423) in each of their respective cases.  *See* Bankr. No.

20-00532-NGH, Dkt. No. 23; Bankr. No. 21-00201-JMM, Dkt. No. 29.  In both cases, the

debtors have independently hired new counsel, Hyrum Zeyer,[5] and represented to him that the

Financial Management Course Certifications were provided to Youngblood prior to the cases

being closed, but Youngblood never filed the certificates.

In moving to reopen the *In re Wheeler* case, the debtor stated:

---

[5] While Mr. Zeyer has taken action in the *In re Wheeler* case, he was only recently contacted in the *In re Martinez* case and reports to the UST that he is currently working on remedying the issues in that case.

> In working with their prior attorney, the Debtors were unsuccessful
> in filing with the Court their certificates of completion for their
> second online course and this case closed without a discharge. The
> Debtors have completed their course and it is the intention of the
> Debtor(s) to file their certificates with the court once their case is
> reopened.

Bankr. No. 20-00532-NGH, Dkt. No. 25. In some instances, then, Youngblood's lack of

diligence and communication has cost his clients their discharge.

There are other open cases where the debtors are facing the loss of their discharge due to

issues with responding to the income tax turnover order, including *In re Phipps*, 20-40915-JMM

(pending adversary proceeding to revoke discharge; a default was entered October 5, 2021); *In re*

*Ramirez*, 21-40012-JMM (pending adversary proceeding to revoke discharge); *In re Bates*, 20-

40961-JMM (in an October 4, 2021, trustee report, the trustee indicated that, if he does not

receive refunds by October 31, 2021, he will be filing an adversary proceeding to revoke

discharge). The UST does not, at this time, have specific evidence tying the debtors' non-

compliance with the income tax turnover orders in those cases to deficiencies in Youngblood's

representation. At the same time, the UST notes the issues in the Larson Case Motion, which, in

part, revolved around income tax turnover issues, appears to have been the result of

Youngblood's lack of diligence and communication.

<u>*In re Johnson*, 21-40533-JMM</u>
<u>*In re Aguilar*, 21-00553-NGH</u>

In each of these cases, a § 341 meeting was scheduled for October 14, 2021, with Trustee

Patrick Geile. At the time of the § 341 meeting in the *In re Johnson* case, neither the debtor nor

the trustee had been informed of any request or need of a continuance of the meeting in the case.

The debtor appeared at the meeting; Youngblood did not. Trustee Geile continued the meeting

due to Youngblood's non-appearance.

By the time the § 341 meeting in the *In re Aguilar* case was held, Youngblood had

contacted Trustee Geile to indicate he would not be appearing.  Apparently, Youngblood did not

communicate that same message to his client.  The UST received a voicemail from Mr. Aguilar's

spouse indicating her husband had missed his § 341 because they could not get ahold of

Youngblood and had the wrong information to call into the telephonic § 341 meeting.

These cases demonstrate concerns with Youngblood's diligence and communication in

his representation of his clients.  As such, the compensation received by Youngblood in the

above-captioned cases is not reasonable and should be returned under § 329(b).

### b.  *Violations of IRPC 3.3*

An attorney's duties of candor towards the Court are outlined in IRPC 3.3, which

includes, among other things:

> (a)  A lawyer shall not knowingly:
> (1)  make a false statement of fact or law to a tribunal or fail to
>       correct a false statement of material fact or law previously
>       made to the tribunal by the lawyer.

Attorneys, as officers of the court, have special duties to avoid conduct that undermines the

integrity of the adjudicative process. IRPC 3.3, cmt. 2.  Part of that duty includes not allowing

the Court to be misled by false statements of law or fact or evidence the attorney knows to be

false.  *Id.*  The duty of candor dovetails with the § 526(a)(2) prohibition against making, or

advising an assisted person to make, an untrue or misleading statement in a document filed in a

case or proceeding.

As noted elsewhere in this Motion, including in the discussion regarding signature pages

and the discussion on 2016(b) Disclosure of Compensation issues, several the representations by

Youngblood in the above-captioned cases are untrue and misleading.  The additional violation of

IRPC 3.3 caused by the false statements and representations is additional cause for the return of fees under § 329(b).

4. **Youngblood's 2016(b) Disclosures of Compensation and Fee Agreements**

The Code establishes the terms upon which attorneys who represent debtors may receive compensation. *See, e.g.,* §§329, 330, 526; Rules 2016, 2017. In the Chapter 7 context, attorneys who represent debtors: (a) cannot receive compensation from the estate for their representation of the debtor, *Lamie v. United States Trustee*, 540 U.S. 526, 536-37 (2004); (b) cannot collect fees from their clients during the post-petition period if those fees arose from services provided pre-petition, *In re Biggar*, 110 F.3d 685 (9th Cir. 1997); and (c) must charge reasonable fees for the services they render to their debtor clients, § 329.

Due to the inability of some clients to pay the entire fees associated with a Chapter 7 case before a petition is filed, some attorneys craft agreements that purport to "bifurcate" their services into pre- and post-petition portions. The intent of such agreements is apparently, at least in part, to avoid the effects of the automatic stay and the discharge injunction by allocating most of the attorney's services to the post-petition period, thereby allowing the attorney to collect their fees after the petition has been filed.

In general, courts have determined that bifurcated contracts in the Chapter 7 context are not *per se* prohibited. *See, e.g., In re Milner*, 612 B.R. 415, 432 (Bankr. W.D. Okla. 2019); *In re Carr*, 613 B.R. 427, 442 (Bankr. E.D. Ky. 2020). At the same time, the particulars of fee agreements bifurcating services must be analyzed to determine (1) whether the disclosures to the client are sufficient; (2) whether disclosures to the Court are accurate; (3) whether the fee arrangement indicates the fees being charged are reasonable for the services being performed; and (4) whether the fee arrangement creates an impermissible conflict of interest.

### a.  **Disclosures to Clients**

As noted above, § 526(a)(1) requires an attorney debt relief agency to perform all services he has informed an assisted person he would provide in connection with a bankruptcy case.  A 2016(b) Disclosure of Compensation has been filed in nearly all the above-captioned cases,[6] describing which services Youngblood would provide in connection with each case in exchange for compensation.  The filed 2016(b) disclosures appear to indicate Youngblood is misrepresenting the services he will provide to his clients, in violation of § 526(a)(3),[7] and is telling his clients he will provide certain services that he subsequently fails to perform, in violation of § 526(a)(1).

The form and content of Youngblood's 2016(b) Disclosures of Compensation have evolved over time.  Prior to November 25, 2020, Youngblood primarily used one form (the "Old Disclosure Form"), and, starting on or around November 25, 2020, he primarily used another, updated form (the "New Disclosure Form").  *Compare* Bankr. No. 20-40819-JMM, Dkt. No. 4 *with* Bankr. No. 20-40915-JMM, Dkt. No. 4.  Both forms highlight problems in Youngblood's representations to his clients and the Court.

*Disclosures Under the Old Disclosure Form*

The bankruptcy cases where Youngblood used the Old Disclosure Form are:

---

[6] 2016(b) Disclosures of Compensation have not been filed in *In re Barendregt*, 21-40931-JMM, or *In re Phipps*, 21-40100-JMM.
[7] Section 526(a)(3) provides:
  (a)  A debt relief agency shall not–
    (3)  misrepresent to any assisted person or prospective assisted person, directly or indirectly, affirmatively or by material omission, with respect to–
      (A)  the services that such agency will provide to such person; or
      (B)  the benefits and risks that may result if such person becomes a debtor in a case under this title.

| Case Number | Debtor | Date Petition Filed | Total For Legal Services | Received Prior to Filing 2016(b) Disclosure | Balance Owed When 2016(b) Disclosure Filed | 2016(b) Disclosure Dkt. No. |
|---|---|---|---|---|---|---|
| 19-40324-JMM | Brian Andreasen and Kathryn A. Andreasen | 4/8/2019 | $1,910.00 | $0.00 | $1,910.00 | Dkt. No. 4 |
| 19-40730-JMM | Stephen and Danielle Pichette | 8/2/2019 | $1,700.00 | $500.00 | $1,200.00 | Dkt. No. 4 |
| 19-40972-JMM | Lyone B. Overlin and Rebecca J. Overlin | 10/10/2019 | $1,910.00 | $0.00 | $1,910.00 | Dkt. No. 4 |
| 20-00634-NGH | Christopher Lee Allen and Haley Cherie Allen | 7/13/2020 | $2,200.00 | $0.00 | $2,200.00 | Dkt. No. 4 |
| 20-00760-NGH | Morris Adair Margeson | 8/19/2020 | $1,910.00 | $0.00 | $1,910.00 | Dkt. No. 4 |
| 20-00765-NGH | Katherine L. Lantz | 8/20/2020 | $1,910.00 | $0.00 | $1,910.00 | Dkt. No. 4 |
| 20-00784-NGH | Rebecca Lynn Estraca | 8/25/2020 | $1,910.00 | $0.00 | $1,910.00 | Dkt. No. 4 |
| 20-00843-JMM | James Edward Descoteau | 9/17/2020 | $2,100.00 | $0.00 | $2,100.00 | Dkt. No. 4 |
| 20-40754-JMM | Darrel Dickson, Jr. | 9/25/2020 | $1,910.00 | $0.00 | $1,910.00 | Dkt. No. 4 |
| 20-00915-NGH | Eugene Swinhart | 10/20/2020 | $1,610.00 | $0.00 | $1,610.00 | Dkt. No. 4 |
| 20-40819-JMM | Kara D. Andrus | 10/20/2020 | $1,910.00 | $0.00 | $1,910.00 | Dkt. No. 4 |

As to the services that would be provided in cases using the Old Disclosure Form, the form indicates that "in return for the above-disclosed fee [in each disclosure]," Youngblood agreed to

> render legal service for all aspects of the bankruptcy case, including:
> a.  Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;
> b.  Preparation and filing of any petition, schedules, statement of affairs and plan which may be required;
> c.  Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof.

*See, e.g.,* Bankr. No. 20-40819-JMM, Dkt. No. 4.  Later in the form, there is language indicating:

> Debtor and Attorney have entered into two separate fee agreements.  The first was for $0.00 fees, but may have included

> costs, signed pre-petition, for the preparation and filing of the
> bankruptcy petition, review, analysis and advisement of the typical
> matters that are required to be performed pre-petition by a
> bankruptcy attorney under the applicable bankruptcy and ethical
> rules.  Any fees and costs for pre-petition services unpaid at the
> time of filing are waived.  The second fee agreement was for
> $_____, signed post-petition for the completion of the
> balance of the schedules, representation at the 341 meeting of
> creditors, and the legal services outlined in the fee agreement.

*Id.*  Typically,[8] the blank line in the above-quoted language was filled in with the total fee amount described earlier in the Old Disclosure Form.  *See, e.g., id.*  The Old Disclosure Form also typically excluded certain, specified matters from the services being provided in exchange for the fees.  *See, e.g., id.*; *but see* Bankr. No. 19-40971-JMM, Dkt. No. 4 (representative of some cases where no services were excluded).

The Old Disclosure Form states that, pre-petition, Youngblood would prepare and file the bankruptcy petition and would review, analyze, and advise of the "typical matters that are required to be performed pre-petition by a bankruptcy attorney under the applicable bankruptcy and ethical rules."  *See, e.g.,* Bankr. No. 20-40819-JMM, Dkt. No. 4.  As to post-petition services, the Old Disclosure Form states Youngblood would complete "the balance of the schedules," represent the debtor at the § 341 meeting, and provide other "legal services outlined in the fee agreement."

As noted elsewhere in this Motion, Youngblood often did not communicate with clients, did not attend § 341 meetings, did not timely file Schedules, Statements, and other documents, and was otherwise not performing the services that are required to be performed by a bankruptcy attorney under the applicable bankruptcy and ethical rules.

---

[8] At least once, the blank line was left blank.  *See, e.g.,* Bankr. No. 19-40971-JMM, Dkt. No. 4.

Regarding the fees that would be charged for services, above the language already highlighted in the discussion regarding services, the language of the Old Disclosure Form provides the "above-disclosed fee" paid or agreed to be paid to Youngblood "for services rendered or to be rendered on behalf of the debtor(s) in contemplation of or in connection with the bankruptcy case." *See, e.g.,* Bankr. No. 20-40819-JMM, Dkt. No. 4. The Old Disclosure Form then included a total of the amount Youngblood agreed to accept "for legal services." *Id.*

Typically, the Old Disclosure Form indicated $0.00 had been received prior to the filing of the statement, and that the full amount of fees was still due at the time the 2016(b) Disclosure of Compensation was filed. *Id.* Many, but not all, of the cases using the Old Disclosure Form contained an explanation that debtors were offered two options for the payment of counsel's fees: (1) pre-pay the fees in full before the filing of the Petition; or (2) bifurcate the services into pre- and post-petition work for a higher fee. *Id.* The Old Disclosure Form provided various justifications for the higher fee, including that "FSF" charges a fee to Youngblood "for its financing, payment management, credit reporting and other services provided to Counsel, for which FSF charges a fee equal to (sic)." *Id.* "FSF" is not further identified in the Old Disclosure Form and neither is the amount of the higher fee that is charged in bifurcated cases.[9] *Id.* There is also no explanation of how a fee charged by FSF might be calculated. *Id.* The language potentially disclosing how such a fee might be calculated is simply cut off in the Old Disclosure Form. *Id.*

The Old Disclosure Form is deficient regarding the fees that would be charged for the legal services to be provided by Youngblood and perpetuated misrepresentation by Youngblood to his clients of what services he would be provide. First, the Old Disclosure Statement is

---

[9] There are a few cases using the Old Disclosure Form that, for some reason do not reference "FSF" at all. *See In re Overlin*, Bankr. No. 19-40972-JMM, Dkt. No. 4; *In re Pichette*, Bankr. No. 19-40730-JMM, Dkt. No. 4.

confusing.  Some of the services Youngblood agreed to provide in return for the "above-disclosed fee," which was the total fee for the case, appear to be the same services he stated he agreed to provide for $0.00 elsewhere in the Old Disclosure Form.  *See, e.g.,* Bankr. No. 20-40819-JMM, Dkt. No. 4.  For example, while Youngblood stated that "[i]n return for the above-disclosed [total] fee, I have agreed to render legal service for all aspects of the bankruptcy case, including: a. Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy; [and] b. Preparation and filing of any petition, schedules, statement of affairs and plan which may be required," later in the Old Disclosure Form he said he and the debtors agreed that "preparation and filing of the bankruptcy petition, and review, analysis and advisement of the typical matters that are required to be performed pre-petition by a bankruptcy attorney under the applicable bankruptcy and ethical rules" would be done for $0.00.  *Id.*  It is unclear whether Youngblood was charging $0.00 to advise debtors regarding bankruptcy and to prepare and file their petitions, or whether those services being performed in exchange for the total fee amounts.  The Old Disclosure Form says both.

Second, the Old Disclosure Form contains language indicating a higher fee is charged under bifurcated cases than under cases where all fees are paid pre-petition, and that the higher fee is influenced, at least in part, by a fee charged by "FSF."  *See id.*  If a portion of the fee indicated in the Old Disclosure Form is really a financing charge rather than fees "for legal services," then the Old Disclosure Form is misleading and deceptive.  The fees stated in the Old Disclosure Form are represented as the fees Youngblood agreed to accept "for legal services," not some undisclosed amount he agreed to accept "for legal services" and some other undisclosed amount he agreed to accept as a financing cost or other charge.  Even if the manner

of calculating a split between legal fees and other charges were provided, which, under the Old

Disclosure Form, it is not, the fees or charges for legal services, and the terms of payment, are

misleading and misrepresent the services that would be provided by Youngblood.

The lack of clarity regarding which services would be provided for which compensation

amounts to a misrepresentation of the services that would be provided to the debtors in violation

of § 526(a)(3)(A).  And Youngblood did not perform some of the services he indicated to his

clients would be provided in connection with their bankruptcy cases, in violation of § 526(a)(1).

*Disclosures Under the New Disclosure Form*

The bankruptcy cases where Youngblood used the New Disclosure Form are:

| Case Number | Debtor | Date Petition Filed | Total for Legal Services | Received Prior to Filing 2016(b) Disclosure | Balance Owed When 2016(b) Disclosure Filed | 2016(b) Disclosure Dkt. No. |
|---|---|---|---|---|---|---|
| 20-40915-JMM | Christy L. Phipps | 11/25/2020 | $1,910.00 | $0.00 | $1,910.00 | Dkt. No. 4 |
| 20-01047-JMM | Dominique Wilson | 12/9/2020 | $1,910.00 | $0.00 | $1,910.00 | Dkt. No. 4 |
| 20-01063-JMM | Leslie A. Settles | 12/15/2020 | $1,910.00 | $0.00 | $1,910.00 | Dkt. No. 4 |
| 20-40961-JMM | Tyron L. Bates and MeaGan Bennett | 12/15/2020 | $1,910.00 | $0.00 | $1,910.00 | Dkt. No. 4 |
| 21-40012-JMM | Callie Ramirez | 1/6/2021 | $1,800.00 | $0.00 | $1,800.00 | Dkt. No. 4 |
| 21-40162-JMM | Kendrick N. Pereira | 3/18/2021 | $1,910.00 | $0.00 | $1,910.00 | Dkt. No. 4 |
| 21-00248 - JMM | Hannah Joy Cain | 4/15/2021 | $1,910.00 | $0.00 | $1,910.00 | Dkt. No. 4 |
| 21-40286-JMM | Hunter B. Soliday | 5/7/2021 | $1,800.00 | $0.00 | $1,800.00 | Dkt. No. 4 |
| 21-40374-JMM | Kristi M. Randall | 6/23/2021 | $2,210.00 | $0.00 | $2,210.00 | Dkt. No. 5 |
| 21-40460-JMM | Samantha M. Whitworth | 8/2/2021 | $2,210.00 | $0.00 | $2,210.00 | Dkt. No. 5 |
| 21-40466-JMM | Joshua T. Claunch and Anika D. Claunch | 8/3/2021 | $2,210.00 | $0.00 | $2,210.00 | Dkt. No. 5 |
| 21-40467-JMM | Ashlee M. Croasmun | 8/3/2021 | $2,210.00 | $0.00 | $2,210.00 | Dkt. No. 5 |
| 21-00512-NGH | Jamie Poole | 8/5/2021 | $2,210.00 | $0.00 | $2,210.00 | Dkt. No. 5 |
| 21-40476-JMM | Cameron Ward and Melissa Heath | 8/11/2021 | $2,210.00 | $0.00 | $2,210.00 | Dkt. No. 5 |
| 21-40482-JMM | Britni Howe and Cassie Howe | 8/17/2021 | $2,210.00 | $0.00 | $2,210.00 | Dkt. No. 5 |
| 21-40483-JMM | Rafa Elliott and Cynthia Elliott | 8/18/2021 | $2,210.00 | $0.00 | $2,210.00 | Dkt. No. 15 |

| 21-00553-NGH | David Martinez Aguilar | 8/24/2021 | $2,210.00 | $0.00 | $2,210.00 | Dkt. No. 5 |
|---|---|---|---|---|---|---|
| 21-40497-JMM | Chad N. Moxley and Toni L. Moxley | 8/24/2021 | $2,210.00 | $0.00 | $2,210.00 | Dkt. No. 5 |
| 21-40513-JMM | Christopher Cook and Tausha Cook | 8/31/2021 | $2,210.00 | $0.00 | $2,210.00 | Dkt. No. 5 |
| 21-40517-JMM | Louis Davis Ellwood and Jessica Ellwood | 9/1/2021 | $2,210.00 | $500.00 | $1,710.00 | Dkt. No. 5 |
| 21-40521-JMM | Eric W. Horton and Randalee M. Browyer | 9/3/2021 | $2,210.00 | $0.00 | $2,210.00 | Dkt. No. 5 |
| 21-40526-JMM | Norberto Rodriguez | 9/7/2021 | $2,210.00 | $0.00 | $2,210.00 | Dkt. No. 5 |
| 21-40532-JMM | Kelsie Shurtliff | 9/10/2021 | $1,910.00 | $0.00 | $1,910.00 | Dkt. No. 5 |
| 21-40533-JMM | Marissa J. Johnson | 9/10/2021 | $1,910.00 | $0.00 | $1,910.00 | Dkt. No. 5 |
| 21-40540-JMM | Christopher D. Smith and Misty Smith | 9/14/2021 | $1,910.00 | $0.00 | $1,910.00 | Dkt. No. 5 |
| 21-40557-JMM | Eric R. Whittekiend and Sharla K. Whittekiend | 9/22/2021 | $1,910.00 | $0.00 | $1,910.00 | Dkt. No. 5 |
| 21-40563-JMM | Nathan S. Tracy | 9/23/2021 | $2,210.00 | $0.00 | $2,210.00 | Dkt. No. 5 |

The New Disclosure Form describes services that were to be performed by Youngblood both pre- and post-petition.  *See, e.g.,* Bankr. No. 20-40915-JMM, Dkt. No. 4.  Like the Old Disclosure Form, the New Disclosure Form identifies certain fees Youngblood agreed to provide "in return for the above-disclosed [total] fee."  *Id.*  Such was

> to render legal service for all aspects of the bankruptcy case, including:
> a. Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;
> b. Preparation and filing of any petition, schedules, statement of affairs and plan which may be required;
> c. Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof.

*Id.*  The New Disclosure Form also includes language attempting to bifurcate pre-petition services from post-petition services, and is only slightly better than the Older Disclosure Form in that regard.  The New Disclosure Form provides that, under a pre-petition fee agreement, Youngblood was to provide services

> for the preparation and filing of the bankruptcy petition, statement
> about social security number, creditor list and other documents
> required at the time of filing; and review, analysis and advisement
> of the typical matters that are required to be performed prior to
> filing by a bankruptcy attorney under the applicable bankruptcy
> and ethical rules.

*Id.* For post-petition services, the New Disclosure Form indicates such services would include

> the preparation of schedules or assets and liabilities, and statement
> of financial affairs; preparation and filing of other required
> documents; representation at the first meeting of creditors; and
> other services outlined in the fee agreement.

*Id.*

While some new information is provided, the New Disclosure Form does little better in clearly explaining the services to be provided by Youngblood than the Old Disclosure Form did. Youngblood continued to represent and state he would provide services that he never performed.

As to the fees that would be charged for the services provided by Youngblood, above the already-highlighted language, the New Disclosure Form indicates the fees that were agreed to be paid by the debtors "for legal services," and that Youngblood agreed the compensation paid or agreed to be paid to him was "for services rendered or to be rendered on behalf of the debtor(s) in contemplation of or in connection with the bankruptcy case." *Id.* Like the Old Disclosure Form, the New Disclosure Form indicated there were two options offered to debtors, with the second being bifurcation of services into pre- and post-petition work, with higher fees being charged in such cases than if the fees for the bankruptcy were paid in full before the Petition was filed. The New Disclosure Form indicates the higher fee is based, in part, on a fee charged to Youngblood by Fresh Start Funding in an amount equal to 25% of the attorney fee that Youngblood charges the debtor for post-petition services. *Id.* Whereas the Old Disclosure Form

was silent on the subject, the nature of Fresh Start Funding and its services is briefly described in the New Disclosure Form.[10]  *Id.*

The New Disclosure Form suffers from the same confusing and conflicting language as the Old Disclosure Form, indicating two compensation amounts charged for overlapping services.  *Id.*  While adding language more strongly suggesting a portion of the fees being collected as fees "for legal services" are actually being charged and collected for another purpose such as fees to Fresh Start Funding, the New Disclosure Form still plainly states the debtors agreed to pay the total amount of fees "for legal services."  *See id.*  The New Disclosure Form indicates 25% of the amount charged for post-petition services may be a financing charge Youngblood will pay to Fresh Start Funding.  *Id.*  If a portion of Youngblood's compensation is really a financing charge, the New Disclosure Form is misleading and deceptive because debtors are told the amount they are paying is for legal services – not for legal services and a financing charge.

The 2016(b) Disclosures of Compensation filed in the above-captioned cases indicate Youngblood misrepresented the services he would provide to his clients, in violation of § 526(a)(3), and indicate services would be provided to clients that were never performed, in violation of § 526(a)(1).

*In re Andreasen*, 19-40324-JMM

While the foregoing discussion has focused on issues with the Old Disclosure Form, the New Disclosure Form, and the disclosures thereunder, in general, one case, in particular, highlights additional concerns with the manner in which Youngblood was disclosing services and fees to his clients.  In *In re Andreasen*, 19-40324-JMM, Youngblood used the Old

---

[10] While not stated in the Old Disclosure Form, it is presumed the references therein to "FSF" were likely references to Fresh Start Funding.

Disclosure Form to disclose he would be paid $1,910.00 for services in connection with the

debtors' bankruptcy case.  Bankr. No. 19-40324-JMM, Dkt. No. 4.  That amount was to cover,

among other things, "[p]reparation and filing of any petition, schedules, statement of affairs and

plan which may be required."  *Id.*  The initial 2016(b) Disclosure of Compensation in the *In re*

*Andreasen* case did not exclude any services under the disclosed compensation.  *Id.*

On April 23, 2020, Youngblood filed Amended Schedules for the debtors.  In the docket

text entry for the Amended Schedules, Youngblood inserted: "Description of Amendment: A/B

& C to add/exempt tax refund Filed by Debtor Brian Andreasen, Joint Debtor Kathryn A.

Andreasen. (Youngblood, Kameron)."  *See id.*, Dkt. No. 29 and Docket Entry of April 23, 2020,

for Dkt. No. 29.  That same day, Youngblood filed an Amended 2016(b) Disclosure of

Compensation for$175.00 in, apparently, additional fees.  *See id.*, Dkt. No. 31.  In the docket text

entry for the Amended 2016(b) Disclosure of Compensation, Youngblood explained the purpose

of the amended disclosure was to "[a]dd additional compensation for tax amendment to

schedules."  *Id.*, Docket entry of April 23, 2020 for Dkt. No. 31.

The result is that, while Youngblood disclosed to the debtors, and the Court, that

$1,910.00 in compensation was going to cover all services in connection with the bankruptcy

case and, at the very least, would cover the preparation and filing of all required schedules in the

case, he later charged the debtors an additional $175.00 to file amended schedules to claim an

additional exemption.  The shifting nature of Youngblood's fee arrangement and disclosures in

the *In re Andreasen* case causes additional concern that he was misrepresenting the services he

was going to provide and the amount of fees he was charging for the services.

### b.  **Disclosures to the Court**

The Bankruptcy Code and Federal Rules of Bankruptcy Procedure require that any attorney representing a debtor disclose the compensation they have agreed to accept for such representation.  *See* § 329(a); Rules 2016, 2017.  This reporting requirement is effective beginning one year prior to the debtor filing a petition for relief and continues throughout the period that a case remains pending before the Court.  *See* Rules 2016, 2017.  To comply with this reporting requirement the attorney for the debtor must file a statement within 14 days of the petition date which discloses the compensation they have agreed to accept and any agreement they have entered into to share compensation outside of their law firm.  *See* Rule 2016(b).

Attorneys representing a debtor in a bankruptcy case have an affirmative duty to fully and completely disclose all fee arrangements and all payments.  *See* § 329(a); Rule 2016(b); *In re Kowalski*, 402 B.R. 843, 849-50 (Bankr. N.D. Ill. 2009).  In this regard, attorney disclosures must be "precise and complete."  *In re Berg*, 356 B.R. 378, 381 (Bankr. E.D. Pa. 2006) (internal quotation omitted).  An attorney who fails to comply with the requirements of § 329(a) or Rule 2016(b) is subject to "forfeiture of 'any right to receive compensation for services rendered on behalf of the debtor,' and the disgorgement of any funds already paid by the debtor."  *In re McTyire*, 357 B. R. 898, 904 (Bankr. M.D. Ga. 2006), quoting *In re Woodward*, 229 B.R. 468, 473 (Bankr. N.D. Okla. 1999).  Even negligent or inadvertent failure to disclose fully relevant information in a Rule 2016 statement may result in denial of all requested fees.  *Neben & Starrett, Inc. v. Chartwell Financial Corp. (In re Park–Helena Corp.)*, 63 F.3d 877, 882 (9th Cir. 1995).

Generally, Youngblood discloses the entire fee, along with the bifurcation of the fee and existence of a financing arrangement with Fresh Start Funding in his 2016(b) Disclosures.

However, these disclosures are still incomplete in relation to both the financing agreement and Youngblood's fee. In relation to any financing agreement between Youngblood and Fresh Start Funding, the disclosures fail to explain that the amount disclosed is, apparently, not representative of Youngblood's compensation in the case. Rather, the disclosures indicate the fees are "for legal services;" or, in other words, that the amount disclosed is Youngblood's compensation received for providing legal services and nothing more. If Fresh Start Funding is receiving a specific portion of the disclosed amount as a financing charge, the actual reduced amount Youngblood received as compensation for his legal services and the amount that is a financing charge to Fresh Start Funding are essential to a fulsome disclosure of Youngblood's entire fee arrangement, fee sharing with Fresh Start Funding, and his actual compensation. Without such disclosures, Youngblood's 2016(b) Disclosures of Compensation lack the precision and completeness that are contemplated by the Code and Rules.

The failure to disclose precise and complete information renders Youngblood's compliance with § 329 deficient and he should be ordered to return any compensation paid by debtors in connection with the above-captioned cases.

### c.  Reasonableness of Bifurcated Fees under § 329

In the majority of the cases using either the Old Disclosure Form or the New Disclosure Form, Youngblood reported he did not receive any compensation for his pre-petition work. This fact suggests two possibilities: (i) Youngblood's pre-petition work was pro bono and he never intended to receive any compensation for it; or (ii) Youngblood intended to receive at least the same amount of compensation from the bifurcated contract structure as he does in cases where attorney fees are paid in full prior to the Petition being filed, and, therefore, his pre-petition work

would be compensated by post-petition payments.  The second possibility is prohibited under Ninth Circuit case law.  *See In re Biggar*, 110 F.3d 685.

The bifurcated fee process should acknowledge the value of the pre-petition services rendered by the attorney.  However, nothing prevents an attorney from waiving their pre-petition fee altogether as long as their intent is not to charge sufficient sums on the post-petition portion to compensate themselves for the purportedly "free" pre-petition work.  Accordingly, if Youngblood intended to provide his bifurcated fee clients with pro bono pre-petition services then it is reasonable to expect that his portion of the overall fee[11] would be lower than the fees he collects in cases where he is paid in full before filing a petition.

Six of Youngblood's open cases were paid in full prior to the petition being filed:

| Case Number | Debtor | Date Petition Filed | Total Paid for Bankruptcy Services[12] |
|---|---|---|---|
| 20-40528-JMM | April Trejo Espino | 7/9/2020 | $1,800.00 |
| 21-40002-JMM | Lauren Dawn Rivera | 1/3/2021 | $1,200.00 |
| 21-40160-JMM | Rhonda M. Wright | 3/18/2021 | $1,500.00 |
| 20-01004-JMM | Heather Manning | 11/19/2020 | $1,500.00 |
| 20-40902-JMM | Tara Dawn MacTaggart | 11/19/2020 | $1,500.00 |
| 20-40903-JMM | Brandy G. Emdin | 11/19/2020 | $1,750.00 |
| **Average** | | | **$1,541.67** |

For the purposes of this analysis, it is assumed Youngblood must pay 25% of the post-petition funds collected to Fresh Start Funding.  The pre-petition funds and Youngblood's portion of the post-petition funds in his bifurcated fee cases[13] is as follows:

---

[11] Reading between the lines that some portion of the overall fee is actually a financing charge paid to Fresh Start Funding.

[12] It is unclear whether the amount in the paid-in-full cases was intended to cover the filing fees.  The Old Disclosure Form is also silent, while the New Disclosure Form informed the compensation to Youngblood did not cover filing fees.

[13] There are a handful of other cases where fees are split into pre- and post-disclosure fees, though it does not appear the post-disclosure fees are necessarily financed and/or intended to be for post-petition services in those cases.

| Case Number | Debtor | Date Petition Filed | Amount of Youngblood's Compensation (= pre-petition payments + 75% of the amount disclosed as post-petition compensation in the filed 2016(b) disclosures) |
|---|---|---|---|
| 19-40324-JMM | Brian Andreasen and Kathryn A. Andreasen | 4/8/2019 | $1,432.50 |
| 19-40730-JMM | Stephen and Danielle Pichette | 8/2/2019 | $1,400.00 |
| 19-40972-JMM | Lyone B. Overlin and Rebecca J. Overlin | 10/10/2019 | $1,432.50 |
| 20-00634-NGH | Christopher Lee Allen and Haley Cherie Allen | 7/13/2020 | $1,650.00 |
| 20-00760-NGH | Morris Adair Margeson | 8/19/2020 | $1,432.50 |
| 20-00765-NGH | Katherine L. Lantz | 8/20/2020 | $1,432.50 |
| 20-00784-NGH | Rebecca Lynn Estraca | 8/25/2020 | $1,432.50 |
| 20-00843-JMM | James Edward Descoteau | 9/17/2020 | $1,575.00 |
| 20-40754-JMM | Darrel Dickson, Jr. | 9/25/2020 | $1,432.50 |
| 20-00915-NGH | Eugene Swinhart | 10/20/2020 | $1,207.50 |
| 20-40819-JMM | Kara D. Andrus | 10/20/2020 | $1,432.50 |
| 20-40915-JMM | Christy L. Phipps | 11/25/2020 | $1,432.50 |
| 20-01047-JMM | Dominique Wilson | 12/9/2020 | $1,432.50 |
| 20-01063-JMM | Leslie A. Settles | 12/15/2020 | $1,432.50 |
| 20-40961-JMM | Tyron L. Bates and MeaGan Bennett | 12/15/2020 | $1,432.50 |
| 21-40012-JMM | Callie Ramirez | 1/6/2021 | $1,350.00 |
| 21-40162-JMM | Kendrick N. Pereira | 3/18/2021 | $1,432.50 |
| 21-00248 -JMM | Hannah Joy Cain | 4/15/2021 | $1,432.50 |
| 21-40286-JMM | Hunter B. Soliday | 5/7/2021 | $1,350.00 |
| 21-40374-JMM | Kristi M. Randall | 6/23/2021 | $1,657.50 |
| 21-40460-JMM | Samantha M. Whitworth | 8/2/2021 | $1,657.50 |
| 21-40466-JMM | Joshua T. Claunch and Anika D. Claunch | 8/3/2021 | $1,657.50 |
| 21-40467-JMM | Ashlee M. Croasmun | 8/3/2021 | $1,657.50 |
| 21-00512-NGH | Jamie Poole | 8/5/2021 | $1,657.50 |
| 21-40476-JMM | Cameron Ward and Melissa Heath | 8/11/2021 | $1,657.50 |
| 21-40482-JMM | Britni Howe and Cassie Howe | 8/17/2021 | $1,657.50 |
| 21-40483-JMM | Rafa Elliott and Cynthia Elliott | 8/18/2021 | $1,657.50 |
| 21-00553-NGH | David Martinez Aguilar | 8/24/2021 | $1,657.50 |
| 21-40497-JMM | Chad N. Moxley and Toni L. Moxley | 8/24/2021 | $1,657.50 |
| 21-40513-JMM | Christopher Cook and Tausha Cook | 8/31/2021 | $1,657.50 |
| 21-40517-JMM | Louis Davis Ellwood and Jessica Ellwood | 9/1/2021 | $1,782.50 |

| | | | |
|---|---|---|---|
| 21-40521-JMM | Eric W. Horton and Randalee M. Browyer | 9/3/2021 | $1,657.50 |
| 21-40526-JMM | Norberto Rodriguez | 9/7/2021 | $1,657.50 |
| 21-40532-JMM | Kelsie Shurtliff | 9/10/2021 | $1,432.50 |
| 21-40533-JMM | Marissa J. Johnson | 9/10/2021 | $1,432.50 |
| 21-40540-JMM | Christopher D. Smith and Misty Smith | 9/14/2021 | $1,432.50 |
| 21-40557-JMM | Eric R. Whittekiend and Sharla K. Whittekiend | 9/22/2021 | $1,432.50 |
| 21-40563-JMM | Nathan S. Tracy | 9/23/2021 | $1,657.50 |
| **Average** | | | **$1,522.96** |

The average amount received by Youngblood in his paid-in-full cases was $18.71 more than the average amount received in his bifurcated fee cases. That difference, however, is not as great as would be expected if all work done prior to the petition date in the bifurcated fee cases was free or if the fees for those services were waived.

The fees charged in Youngblood's paid-in-full cases and his bifurcated fee cases demonstrate the fees being charged for the limited post-petition services is not reasonable. He sought to be compensated nearly as much in his bifurcated fee cases as when receiving compensation for all the services performed in a case. As such, the compensation he received should be returned pursuant to § 329(b).

### d.   Youngblood's Bifurcated Fee Arrangement Creates Impermissible Conflicts of Interest

The language of the Old Disclosure Form indicates Youngblood "has a line of credit from a third-party lender secured by an assignment of the account receivable owed by Debtor(s)."[14] *See, e.g.,* Bankr. No. 20-40754-JMM, Dkt. No. 4. Later, the form indicates that Youngblood "is able to draw funds under [his] line of credit in an amount up to 75% of the post-petition fees so

---

[14] The language of the Old Disclosure Form does not identify Fresh Start Funding as the "third-party lender," but this is likely because certain language in the form used by Youngblood appears to have been cut-off. *See, e.g.,* Bankr. No. 20-40754-JMM, Dkt. No. 4. There is an oblique reference to "FSF," in the Old Disclosure Form, and it is believed the referred to third-party lender is Fresh Start Funding.

long as [he] assigns the post-petition receivable to the lender as collateral for payment . . . ." *Id.*
In other words, under the funding arrangement referenced in the Old Disclosure Form, once such
a case was commenced, Youngblood had access to a line of credit from his lender.

Idaho Rule of Professional Conduct 1.7 provides:

> (a) Except as provided in paragraph (b), a lawyer shall not
> represent a client if the representation involves a concurrent
> conflict of interest.  A concurrent conflict of interest exists if:
>     ****
>     (2)    there is a significant risk that the representation of one
>     or more clients will be materially limited by . . . the
>     personal interests of the lawyer . . . .

IRPC 1.7(a)(2).

The net monthly income in the cases where Youngblood used the bifurcated fee
arrangement indicates that, in most cases,[15] the debtors had negative net monthly income before
adding the burden of paying Youngblood's fees on a monthly basis.  Put differently, it was clear
from documents Youngblood created and filed hat the debtors would not be able to afford their
monthly payments to Youngblood.  The arrangement recognized in the 2016(b) disclosures,
while beneficial to Youngblood because it opened his access to a line of credit, was financially
detrimental to Youngblood's clients.  They were being set up to fail, burdened with additional
financial obligations their finances already showed they could not meet.

The debtors' net monthly income, per their Schedules, was as follows at the time their
cases commenced:

---

[15] There were only 5 of the 39 cases using the bifurcated fee arrangement that had positive monthly net income and
could, in theory, have paid the future payments they were being obligated to:  *In re Pichette*, 19-40730-JMM; *In re
Overlin*, 19-40972-JMM; *In re Soliday*, 21-40286-JMM; *In re Poole*, 21-00512-NGH; and *In re Cook*, 21-40513-
JMM.  There were an additional 6 cases, where the debtors' financial ability to pay the post-petition fees is unknown
– because Schedules have not been filed.

| Case Number | Debtor | Monthly Income (Schedule I) | Monthly Expenses (Schedule J) | Monthly Net Income |
|---|---|---|---|---|
| 19-40324-JMM | Brian Andreasen and Kathryn A. Andreasen | $2,220.93 | $2,665.00 | ($444.07) |
| 19-40730-JMM | Stephen and Danielle Pichette | $5,328.00 | $3,737.69 | $1,590.31 |
| 19-40972-JMM | Lyone B. Overlin and Rebecca J. Overlin | $2,879.79 | $2,207.55 | $672.24 |
| 20-00634-NGH | Christopher Lee Allen and Haley Cherie Allen | $4,836.52 | $5,868.00 | ($1,031.48) |
| 20-00760-NGH | Morris Adair Margeson | $3,265.96 | $3,558.00 | ($292.04) |
| 20-00765-NGH | Katherine L. Lantz | $2,345.41 | $2,436.00 | ($90.59) |
| 20-00784-NGH | Rebecca Lynn Estraca | $2,992.46 | $3,134.00 | ($141.54) |
| 20-00843-JMM | James Edward Descoteau | $3,136.89 | $3,555.00 | ($418.11) |
| 20-40754-JMM | Darrel Dickson, Jr. | $1,534.71 | $2,402.00 | ($867.29) |
| 20-00915-NGH | Eugene Swinhart | $1,490.29 | $1,933.00 | ($442.71) |
| 20-40819-JMM | Kara D. Andrus | $3,759.43 | $5,225.00 | ($1,465.57) |
| 20-40915-JMM | Christy L. Phipps | $2,727.84 | $3,379.00 | ($651.16) |
| 20-01047-JMM | Dominique Wilson | $1,579.43 | $1,685.00 | ($105.57) |
| 20-01063-JMM | Leslie A. Settles | $3,823.00 | $5,197.00 | ($1,374.00) |
| 20-40961-JMM | Tyron L. Bates and MeaGan Bennett | $1,615.67 | $2,613.00 | ($997.33) |
| 21-40012-JMM | Callie Ramirez | $2,566.49 | $2,915.00 | ($348.51) |
| 21-40162-JMM | Kendrick N. Pereira | $2,744.00 | $3,301.35 | ($557.35) |
| 21-00248 -JMM | Hannah Joy Cain | $2,332.33 | $2,365.00 | ($32.67) |
| 21-40286-JMM | Hunter B. Soliday | $9,359.69 | $1,718.00 | $7,641.69 |
| 21-40374-JMM | Kristi M. Randall | $2,623.23 | $2,675.00 | ($51.77) |
| 21-40460-JMM | Samantha M. Whitworth | $996.66 | $1,563.00 | ($566.34) |
| 21-40466-JMM | Joshua T. Claunch and Anika D. Claunch | $5,441.79 | $5,548.00 | ($106.21) |
| 21-40467-JMM | Ashlee M. Croasmun | $2,236.88 | $2,443.00 | ($206.12) |
| 21-00512-NGH | Jamie Poole | $2,673.53 | $2,224.80 | $448.73 |
| 21-40476-JMM | Cameron Ward and Melissa Heath | $2,196.65 | $2,327.00 | ($130.35) |
| 21-40482-JMM | Britni Howe and Cassie Howe | $3,676.81 | $3,692.00 | ($15.19) |
| 21-40483-JMM | Rafa Elliott and Cynthia Elliott | $2,487.76 | $2,894.08 | ($406.32) |
| 21-00553-NGH | David Martinez Aguilar | $3,968.77 | $4,025.00 | ($56.23) |
| 21-40497-JMM | Chad N. Moxley and Toni L. Moxley | No Schedules | No Schedules | $0.00 |
| 21-40513-JMM | Christopher Cook and Tausha Cook | $5,427.15 | $4,245.00 | $1,182.15 |
| 21-40517-JMM | Louis Davis Ellwood and Jessica Ellwood | $2,920.78 | $6,445.00 | ($3,524.22) |
| 21-40521-JMM | Eric W. Horton and Randalee M. Browyer | $3,178.21 | $4,037.00 | ($858.79) |
| 21-40526-JMM | Norberto Rodriguez | $2,201.77 | $2,446.00 | ($244.23) |
| 21-40532-JMM | Kelsie Shurtliff | No Schedules | No Schedules | $0.00 |
| 21-40533-JMM | Marissa J. Johnson | No Schedules | No Schedules | $0.00 |
| 21-40540-JMM | Christopher D. Smith and Misty Smith | No Schedules | No Schedules | $0.00 |
| 21-40557-JMM | Eric R. Whittekiend and Sharla K. Whittekiend | No Schedules | No Schedules | $0.00 |

**Motion for Orders to Show Cause -  49**

| 21-40563-JMM | Nathan S. Tracy | | No Schedules | No Schedules | $0.00 |

The bifurcated fee financing arrangement recognized by the 2016(b) disclosures shows Youngblood's financial interests conflicted with his clients' hope for a fresh start, and his use of such agreements created an impermissible conflict of interest under IRPC 1.7(a)(2). As such, under § 329(b), Youngblood should be ordered to return any collected fees.

## V.    REQUEST FOR RELIEF

Based on the above, the UST asks the Court to impose appropriate monetary and non-monetary remedies, including:

- Cancelling or voiding any contract or agreement in the above-captioned cases between the debtors and Youngblood under §§ 329.

- Under § 329, ordering the return to the debtors in the above-captioned cases the amount of fees each debtor has paid to Youngblood.[16]

- Injunctive relief under § 526(c)(5) and the Court's inherent authority to run its courtroom and supervise the attorneys practicing in front of it, due to Youngblood's intentional violations of § 526, the clear and consistent pattern or practice of violating § 526, and Youngblood's bad faith demonstrated by his repeated misrepresentations to his clients and the Court:

  o Suspend Youngblood's practice in front of the Court until the Court is satisfied the concerns identified herein or at any subsequent hearing have been corrected.

---

[16] It is anticipated such relief would require notice to each potentially affected debtor and the establishment of some sort of "claim" process within which debtors would be required to submit documentation showing the amount of fees they have paid.

**Motion for Orders to Show Cause -  50**

- o  If Youngblood is allowed to practice in front of the Court again, require Youngblood to file a "status report" or other document with the Court in each case where he appears as counsel. Such a document should include a client's wet signature and a clear and conspicuous attestation by the client and Youngblood indicating (1) Youngblood personally met and reviewed the Petition, Schedules, SOFA, and other documents with the client prior to filing; (2) the client's questions have been answered regarding the Petition, Schedules, SOFA, and other documents, and the information included therein, and the client is satisfied he or she is receiving adequate representation from Youngblood; and (3) the client provided Youngblood a copy of the wet signatures for the Petition, Schedules, SOFA, and other documents filed in the case. The requirement to file such a report should continue until the Court is satisfied it is no longer necessary.

- Pursuant to § 526(c)(5)(B), as a result of Youngblood's intentional violations, and pattern and practice of violating, §§ 526(a)(1), (a)(2), and (a)(3), the Court should impose an appropriate civil penalty against Youngblood to deter him from making untrue and misleading statements and misrepresentations in the future.


Date: October 21, 2021                    GREGORY M. GARVIN
                                          Acting United States Trustee for Region 18

                                          /s/ Jason R. Naess
                                          JASON R. NAESS
                                          Attorney for Movant Acting United States Trustee
                                          jason.r.naess@usdoj.gov

**EXHIBIT A**

| Case Number | Debtor | Debts Primarily Consumer Debts | Value of Real and Person Property |
|---|---|---|---|
| 19-40324-JMM | Brian Andreasen and Kathryn A. Andreasen | Yes | $94,907.00 |
| 19-40683-JMM | Peter Michael Lesbo | Yes | $5,685.00 |
| 19-40730-JMM | Stephen and Danielle Pichette | Yes | $206,500.00 |
| 19-40972-JMM | Lyone B. Overlin and Rebecca J. Overlin | Yes | $60,420.00 |
| 20-00634-NGH | Christopher Lee Allen and Haley Cherie Allen | Yes | $16,732.00 |
| 20-00760-NGH | Morris Adair Margeson | Yes | $337,570.00 |
| 20-00765-NGH | Katherine L. Lantz | Yes | $122,560.00 |
| 20-00784-NGH | Rebecca Lynn Estraca | Yes | $19,270.00 |
| 20-00843-JMM | James Edward Descoteau | Yes | $4,030.00 |
| 20-00915-NGH | Eugene Swinhart | Yes | $20,261.29 |
| 20-01004-JMM | Heather Manning | Yes | $17,795.00 |
| 20-01047-JMM | Dominique Wilson | Yes | $2,345.00 |
| 20-01063-JMM | Leslie A. Settles | Yes | $23,532.00 |
| 20-40528-JMM | April Trejo Espino | Yes | $2,510.00 |
| 20-40754-JMM | Darrel Dickson, Jr. | Yes | $180,835.00 |
| 20-40819-JMM | Kara D. Andrus | Yes | $104,591.00 |
| 20-40902-JMM | Tara Dawn MacTaggart | Yes | $15,507.00 |
| 20-40903-JMM | Brandy G. Emdin | Yes | $43,610.00 |
| 20-40915-JMM | Christy L. Phipps | Yes | $17,965.00 |
| 20-40931-JMM | Alicia D. Barendregt and Colin Barendregt | Yes | $185,330.00 |
| 20-40961-JMM | Tyron L. Bates and MeaGan Bennett | Yes | $25,281.00 |
| 21-00248 -JMM | Hannah Joy Cain | Yes | $945.00 |
| 21-00512-NGH | Jamie Poole | Yes | $7,940.10 |
| 21-00553-NGH | David Martinez Aguilar | Yes | $3,475.00 |
| 21-40002-JMM | Lauren Dawn Rivera | Yes | $9,558.21 |
| 21-40012-JMM | Callie Ramirez | Yes | $9,190.00 |
| 21-40032-JMM | Ruth M. Crisp | Yes | $122,800.16 |
| 21-40100-JMM | Lisa M. Phipps | Yes | $26,395.00 |
| 21-40160-JMM | Rhonda M. Wright | Yes | $2,580.00 |
| 21-40162-JMM | Kendrick N. Pereira | Yes | $30,436.00 |
| 21-40286-JMM | Hunter B. Soliday | Yes | $18,010.26 |
| 21-40374-JMM | Kristi M. Randall | Yes | $36,293.00 |
| 21-40415-JMM | Anna M. Baumgart | Yes | $8,985.00 |
| 21-40460-JMM | Samantha M. Whitworth | Yes | $9,125.00 |
| 21-40466-JMM | Joshua T. Claunch and Anika D. Claunch | Yes | $40,695.00 |
| 21-40467-JMM | Ashlee M. Croasmun | Yes | $6,122.00 |
| 21-40476-JMM | Cameron Ward and Melissa Heath | Yes | $1,030.00 |

| 21-40477-JMM | Mark D. Christensen and Sarah A. Christensen | Yes | $43,332.28 |
| 21-40482-JMM | Britni Howe and Cassie Howe | Yes | $6,660.00 |
| 21-40483-JMM | Rafa Elliott and Cynthia Elliott | Yes | $10,728.00 |
| 21-40497-JMM | Chad N. Moxley and Toni L. Moxley | Yes | |
| 21-40513-JMM | Christopher Cook and Tausha Cook | Yes | $8,240.00 |
| 21-40517-JMM | Louis Davis Ellwood and Jessica Ellwood | Yes | $71,859.00 |
| 21-40521-JMM | Eric W. Horton and Randalee M. Browyer | Yes | $30,840.00 |
| 21-40525-JMM | Cody W. Plicka and Angele M. Plicka | Yes | $36,235.00 |
| 21-40526-JMM | Norberto Rodriguez | Yes | $4,445.00 |
| 21-40532-JMM | Kelsie Shurtliff | Yes | |
| 21-40533-JMM | Marissa J. Johnson | Yes | |
| 21-40540-JMM | Christopher D. Smith and Misty Smith | Yes | |
| 21-40557-JMM | Eric R. Whittekiend and Sharla K. Whittekiend | Yes | |
| 21-40563-JMM | Nathan S. Tracy | Yes | |

To be an "assisted person" for the purposes of the Bankruptcy Code, a person must be a "person whose debts consist primarily of consumer debts and the value of whose nonexempt property is less than $204,425." § 101(3).

To evaluate whether the debtors in the above-captioned cases have debts that consist primarily of consumer debts, the UST relied upon the debtors' responses to Question 16 of the Petition: "Are your debts primarily consumer debts?"

To evaluate the value of the debtors' property, the UST started by looking at the value of the debtors' property, exempt or not, as reported in their Schedules. The value of that property is the value reported above. All but two cases were under the value threshold of § 101(3) without even considering exemptions. The exemptions in the other two cases (*In re Pichette*: $142,500.00 in claimed exemptions; *In re Margeson*: $182,570.00 in claimed exemptions) bring the value of those debtors' nonexempt property below the threshold to be assisted persons.